CHAMBERS ET. AL. VS. LECOMPTE.

1. Where a bill seeks a specific performance of a contract, which appears from the bill itself to be within the statute of frauds, it is ground of demurrer.

Chambers et al. vs. Lecompte.

2. A verbal agreement that A will convey a tract of land and pay a sum of money to B, in consideration that B shall make a deed confirming the.sale of another tract of land to C, although executed by B, is within the statute of frauds, and a court of. equity will not compel A to perform the contract. The execution of the deed of confirmation by B is not a part performance which takes the case out of the statute.

APPEAL from St. Louis Circuit Court.

GOODE & CORNICK, for Plaintiffs in error.

1. The case described in the bill comes within one of the classes of cases in which chancery will decree a specific performance, notwithstanding the statutes. See Fonblanque's Equity, p. 150—top page; Sugden on Vendors, bottom page, 114 & 115; 2 Story's Equity Commentaries, page 66.

2. Even if the contract described in the bill had not been specific in its terms, it could not be dismissed. See 2d Story's Equity Commentaries, p. 70, note 3, and the authorities there cited; Parkhurst vs. Van Cortland, 1 John. Ch. R. 283.

3. If M. P. Leduc had been living when the bill was filed, there was no necessity for making him a party, as under the statute he had no interest. See Digest of 1835, page 119, sec. 1.

NAPTON, J., delivered the opinion of the court.

This was a bill in chancery to compel the specific performance of a verbal contract.

The bill charges that in the year 1823, Hyacinth Lecompte conveyed a lot in St. Louis, on First street, formerly owned by one Periconneau, to Cecile Compare for life, with cross remainders over to her two daughters Catharine and Louise, and her son Hyacinth. This last person died in 1835, a minor, and without leaving issue.

On the 17th February, 1841, Catharine and Louise Compare conveyed to M. P. Leduc, for the use of their mother, Cecile Lecompte, (who had previously to this time married said Hyacinth Lecompte) all their reversionary interest in said lot of ground on First street. Both Catharine and Louise were at this time minors. Louise afterwards married George W. Wilson, and became of age on the 1st of February, 1842.

On the 3d of June, 1841, said M. P. Leduc, Hyacinth Lecompte and Cecile, his wife, conveyed the lot on First street to T. J. White, in

consideration of one thousand dollars paid in cash, and a lot on Mound street, previously conveyed by T. J. White and wife to Leduc as trustee of said Cecile Lecompte. The bill alleges that the bargain was a bad one on the part of Lecompte and wife, the difference in value between the two lots being really four thousand instead of one thousand dollars. It is not stated in the bill what interest is given by the deed from White to Leduc, for the use of Cecile Lecompte, to the children of said Cecile Lecompte. Shortly after this conveyance from Hyacinth Lecompte and wife, and Leduc to White, the latter conveyed to E. Tanner, and on the 9th June, 1841, Leduc, Hyacinth and Cacile Lecompte, conveyed to R. C. Gist, as trustee for Edward Tanner, the Mound street lot, which had been conveyed to them by White, as a security for a release from Catharine Compare and Louise Wilson, formerly Compare.

The bill then proceeds to represent that considerable efforts, and some very unfair ones were used by the mother, Cecile Lecompte, to procure the release or ratification of a former conveyance from her daughter, Mrs. Wilson; and that finally the said Cecile (the mother) told said George W. and his wife, Louise, that if they would confirm said deed, which was executed as heretofore stated by Catharine and Louise Compare, she, said Cecile, would, by deed, grant to said George W. and his wife the same interest in said lot on Mound street, to be enjoyed at once, which they would be entitled to at the death of said Cecile, and that she would give immediate possession, and that she would pay to said George W. and wife that portion of said sum of one thousand dollars, paid as aforesaid by T. J. White, as the difference in value between the lots exchanged, to which they would be entitled at her death; and that if unable to pay the five hundred dollars in hand she would secure its payment.

The said George W. and wife thereupon executed their deed of ratification on the 21st February, 1842, but the said Cecile Lecompte refused to perform her part of said agreement. This bill is brought by George W. and his wife, and one Chambers, to whom the said George W. and wife had made a conveyance as trustee for the benefit of themselves jointly, and their survivor and their heirs, &c. Hyacinth Lecompte had died before the filing of the bill.

At the April term, 1845, the defendant filed her demurrer to the bill, and on the 31st May the following special causes of demurrer were assigned: 1st. That the real estate, mentioned in the said bill, on Mound street, was and is held by the defendant for her life, and the remainder in said real estate goes to the said wife of Wilson, and the said Catharine Compare, or the survivor of them, and the said defendant has no

power to convey said property, or any part thereof, prior to the death to either of the persons entitled in remainder. 2nd. Because the bill does not show that the person entitled to the remainder consented to the agreement set up in the bill. 3rd. Because the complainants have a remedy at law. 4th. Because the said agreement in relation to said real estate is void by the statute of frauds. 5th. Because the said H. W. Chambers ought not to be a party to said bill.

The demurrer was sustained and the bill dismissed, and from this decree the complainants have appealed.

The first question which arises in this case, is whether the defendant can by demurrer avail herself of the benefit of the statute of frauds. Where the bill sets out the contract in general terms, the presumption of law is that it is a legal and valid contract, and therefore, if a contract in relation to land, that it is in writing and signed by the party to be charged therewith; consequently, if the defendant in such case desires to set up the statute as a defence, it must be done by a plea in bar, or insisted on in the answer. But where the complainant in the bill shows a contract not in writing, and so expressly describes it, the defendant may demur; and unless the facts set forth in the bill are sufficient to withdraw the contract from the operation of the statute, the demurrer must prevail; Corine vs. Graham & Bleeker, 2, page 177.

In this case the bill in terms sets up a *verbal* contract, and is therefore a fit subject for demurrer. The only question is, whether the facts and circumstances mentioned in the bill are sufficient to take the case out of the statute.

The usual ground upon which courts of equity have withdrawn contracts from the operation of the statute of frauds is part performance ; but in what this part performance consists, has been a question upon which a great variety of opinions has prevailed. In former times, and especially during Lord Hardwick's administration of this branch of law in England, it was supposed to be well settled, that the payment of a considerable portion of the purchase money was such a partial performance of the contract as exempted it from the operation of the statute; but this opinion soon encountered opposition, and appears to have been finally entirely overthrown by Lord Redesdale, in the case of Clinan vs. Cooke, 1 Sch. and Lef. 40. It is now settled that payment of money is not part performance, because it may be repaid, and then the parties will be just as they were before, especially if repaid with interest. The principle upon which part performance takes a case out of the statute, is that it would otherwise make the statute a means of practicing a fraud; and therefore nothing is now considered as a part performance,

which does not put the party into a situation which is a fraud upon him, unless the agreement is performed; 1 Ves. 221; 2 Story's Eq. sec. 761. The ordinary illustration of the principle is the case of a vendee by a parol agreement put in possession. If the agreement be not valid in law or equity, he is a trespasser and liable to an action. As a matter of defence, it is held, that he can, under these circumstances, show the parol agreement by which he acquired possession, and the unwritten agreement being admissible for this purpose is admissible throughout. The case is still stronger where the vendee has not only taken possession, but expended money in valuable or permanent improvements; Clinan vs. Cooke, 1 Sch. and Lef. 40. This is the part performance which is in modern times allowed to prevail over the statute of frauds. It requires no further examination into the cases, illustrative of its practical application, to conclude that the one now before the court contains no semblance of a part performance. There was no attempt made to set about the performance of this contract on the part of Cecile Lecompte. So soon as the complainants had executed their deed of release or confirmation, or in other words, had done what was equivalent to a payment of the purchase money in cases where the consideration was a monied one, the defendant refused to comply with her promise. Here was no delivery of possession, no directions even for a conveyance. On the contrary there was, it seems, an absolute and unconditional refusal by the defendant to convey the premises which she had agreed to convey, and to pay the money agreed to be paid, so soon as the deed from Wilson and wife was executed.

There is another class of cases which has been exempted from the operation of the statute, upon nearly the same principles which influenced the court to consider part performances as producing such exemption. It is where the agreement is intended by the parties to be reduced to writing, according to the statute, but it is prevented by the fraud of one of the parties. In such cases courts of equity have decreed a specific execution of the agreement, upon the ground that to leave it unexecuted would be a fraud upon the party for whose benefit it was intended, and the statute which was made to prevent frauds should not be used to promote them. Most of the cases occurring under this head are cases where there was a design of reducing the contract to writing, but such design has been prevented by the fraud of the party who was to have been charged by the agreement. As where instructions were given by an intended husband to prepare a marriage settlement, and he promises to have the settlement reduced to writing, and fraudulently and secretly prevents its being done, and the marriage takes place in consequence

of false and fraudulent assurances, a specific performance was decreed. But if there had been no fraud, and no agreement to reduce the settlement to writing, but the other party had placed reliance solely on the honor or promise of the husband, no relief would have been granted; for in such cases the party chooses to rely upon the parol agreement, and must take the consequences ; 2 Story's Eq. 78. ` In this class of cases it is important to distinguish that kind of fraud which every breach of promise or breach of trust implies, from a direct fraud, where trick or contrivance has been used to place the party who has complied with a contract on his part, in a position where he is without written evidence of the contract he desires to enforce against the other. It is this latter kind of fraud only which will authorise the interference of a court of chancery, or form the basis of an action at law. No instance is to be found where the courts have interfered, and decreed a specific performance where the fraud consisted only of a breach of promise. Indeed, if such were the law, the statute of frauds would be a dead letter.

There are some cases, it must be admitted, in which opinions have been expressed which cannot be reconciled with the foregoing doctrine relating to this kind and degree of fraud necessary to take a case out of the statute. In Walker vs. Walker, (2 Atk. 99) the defendant was permitted to read parol evidence to rebut an equity set up by the bill. In that case the plaintiff and defendant were brothers; an elder brother told the plaintiff that if he would surrender his copy-hold estate for the benefit of the defendant, he would secure him an annuity for life ; the plaintiff agreed to these terms, and promised to surrender his copy-hold: the elder brother thereupon surrended his copy-hold to the defendant charged with these annuities. The defendant refused to pay them unless the plaintiff would surrender his copy-hold pursuant to his promise. This was a mere matter of defence ; but Lord Hardwicke is reported to have said, that if the defendant had brought his cross bill to have this agreement established, he was not sure the court would not have done it, considering it in the light of those cases, where one part of the agreemeent being performed by one side, it is but common justice if it be carried into execution on the other.

So in Joynes vs. Statham, (3 Atk. 388) which was a bill for the specific performance of an agreement for a lease of a house, the defendant was permitted to show, by way of objection to the specific execution of the judgment, that the plaintiff omitted to insert in the agreement what was intended as a part thereof, to wit: that the tenant should pay the rent clear of taxes. Lord Hardwicke said, if the defendant had

been the complainant, and brought his bill for a specific performance, he did not see but that he might be allowed to declare this parol agreement to the court.

The intention by Lord Hardwicke in these two cases has been noticed by Lord Redesdale in Clinan vs. Cooke, and declared to be contrary to all the decided cases. Lord Redesdale takes a distinction between setting up such agreements by way of defence, and asking their specific execution in the character of plaintiffs. The former is admissible, as the statute does not say that a written agreement shall bind, but that an unwritten one shall not.

In the case of Boyd vs. Stone, the facts were very similar to the present. The defendant having received a conveyance of land from the plaintiff, made a verbal promise that he would, on a certain day thereafter, make a defeasance thereof, so that the same should operate as a mortgage. This promise was held to be within the statute of frauds.

So in the principal case, it appears that the deed of ratification or confirmation by the complainants was made according to the real intent of the parties at the time. No fraud was used to procure this deed, or at least none is charged ; but the complainants executed it with the intent that it should be delivered, as it was, into the hands of the defendant ; and they relied upon her verbal promise that she would at some future time make a conveyance of her interest in the Mound street lot, and would pay them five hundred dollars in cash. To refuse to comply with that promise is morally a fraud ; but it is not the species of a fraud which takes a case out of the statute.

Judgment affirmed.