White v. Watkins.

WHITE, Appellant, v. WATKINS & DAVIS, Respondents.

1. A written advertisement or notice of a trustee's sale, signed by the trustee, is not a sufficient note or memorandum within the statute of frauds.

2. In order that an entry of a sale made by an auctioneer may satisfy the requirements of the statute of frauds, it must be made at the time of the sale; an entry made a month or more after the sale is not sufficient.

3. In order that a delivery of possession to a vendee of land may amount to such a part performance as to take the case out of the statute of frauds, the situation of the parties must be such as that a refusal to carry out the parol contract of sale will work a fraud upon the purchaser.

4. A grantor in a deed of trust, who is also residuary *cestui que trust*, is a necessary party to a suit brought by a purchaser at the trustee's sale for a specific performance of the contract of sale.

5. Where trustees are empowered by a deed of trust to act separately, yet, if they elect to act jointly, as by giving a joint notice of sale, one can not act alone.

*Appeal from Mississippi Circuit Court.*

This was a suit brought by Robert White for the specific performance of a contract for the sale of land. Plaintiff claimed as purchaser at a sale made by defendants, Watkins and Davis, as trustees, under a deed from one Bullock. The facts sufficiently appear from the finding of the court, which is as follows : " The court finds from the allegations of the parties and the proof adduced herein, that the defendants, by virtue of a deed of trust, executed to them by Edmund J. Bullock, in November, 1852, in Charleston, in Mississippi county, Mo., offered the lands mentioned in plaintiff's petition for public sale, and at said sale the plaintiff bid the sum of $1200 25 for said land, and that, being the highest bidder for said land, the same was struck off to him for that sum. The said lands were offered at said sale to the highest bidder for ready money, such being the terms upon which the defendants had previously given notice by written bills, set up at public places in said county. At said sale the defendant Watkins agreed with the plaintiff that if the plaintiff would make a note, payable at the

branch bank of the Bank of Missouri at Jackson, which Albert Brevard might think would be discounted at the first meeting of the directors of the bank, he would take such note for the purchase money of such land. The plaintiff did make a note payable at said branch bank, which said Brevard thought would be discounted by said directors ; and that said Watkins, on the day of the sale, had notice of that fact. Said Brevard was president of said branch bank at the time of said sale, and took said note into his possession by the consent of the plaintiff and the said Watkins. At the time the said note was signed by said White, and the endorsement made thereon, there were blanks upon the face of said note. The clerk of said branch bank, or some other officer of said bank, filled up those blanks, and made said note payable at the Branch Bank of the State of Missouri at Cape Girardeau. The board of directors did not meet on the first Saturday next succeeding the said sale. Said directors did meet about two weeks afterwards. Said note was not presented to said board of directors for discount. Before said directors met, said Watkins told said Brevard that said note need not be discounted for his benefit; that he would not receive the proceeds because the said money had not been paid according to contract, of which fact the plaintiff, within two or three days afterwards, had notice. After said sale, the plaintiff, by direction of the said Watkins, took possession of said land by his agent. His agent remained in possession about two weeks, and then left said possession, and plaintiff has not had possession of said land since that time. More than one month after the said sale, Mills endorsed in writing on one of said notices of sale, given by said defendants as aforesaid, that said plaintiff was the purchaser of said land at said sale, and also the price for which said land was sold, which endorsement was signed by said Mills. The said defendants, or either of them, never gave the said Mills any instructions to make said endorsement.

"In the fall of the year 1853 and before the commencement of this suit, the plaintiff tendered to the defendants the pur-

chase money for said land, and what interest was due on the same up to the time of such tender, and the defendants refused to accept the same. As a conclusion of law upon these facts found as aforesaid, the court declared that the plaintiff ought not to recover in this suit."

*T. Polk, Glover & Richardson*, for appellant.

I. The auctioneer, the sheriff Mills, who made the sale, was, for the purposes of the sale, the agent of both the parties, particularly of the vendors, the defendants. (Sug. on Vendors, 122, 124.) Advertisement that lands are to be sold at public auction, with the terms of sale, is a sufficient memorandum in writing to hold the vendor. (Kirby's Rep. 14.)

II. Sheriff Mills, being the agent of the respondents, and authorized by them in writing—that is, by Davis by letter, which was assented to by Watkins by his conduct at the sale— had authority to make a written memorandum of the sale, of the name of the purchaser, the amount of the purchase money bid, &c. ; and he had authority to do so, whether the defendant expressly so stated to him or not ; and this memorandum in writing was not required to be made at the moment of the sale, but might be made at any reasonable time thereafter.

III. The delivery of the possession of the land sold to the appellant by the respondent takes the case out of the statute of frauds. (Sug. on Vendors, 135–6.) For the purposes of this case, we say that the plaintiff stands before the court exactly as if he had fully paid the purchase money. The plaintiff had done all that he could do, and the defendants had refused to take the proceeds of the note when discounted. This is equivalent to performance for the purpose of maintaining this action. (Pond v. Wyman, 15 Mo. 175.) In this case, therefore, we have what is equivalent to performance ; that is, payment of the purchase money by the plaintiff, and a delivery of possession of the premises to him by the defendants.

*E. Bates*, for respondent.

Specific performance is strictly equitable. It lies in the discretion of the court, and is never granted unless where the con-

tract, being fully and fairly stated, is seen to be, on a proper consideration, reasonable and just in itself, and mutual between the parties, and all the parties in interest are made parties to the suit, so that a decree may be rendered with perfect justice to all concerned. (8 Mo. 374; McMurtrie v. Barnette, Harr. Ch. 124; Lewis v. Woods, 4 How., Miss., 86; May v. Fenton, 7 J. J. Marshall, 306.)

II. The finding negatives the contract alleged in the petition, by showing that the sale was for cash and not for a note; by showing that the defendants did not agree to receive a note in payment instead of cash; by showing that in fact no note was received by the defendants in payment for the land; by showing that the defendants acted as trustees of Bullock, and consequently could not depart from the terms of the deed of trust, which required a cash sale; by showing that Bullock is a party in interest, and ought to be a party to the suit; and by showing that the case is not only destitute of all equity for specific performance, but that the plaintiff has no cause of action at law or equity.

Scott, Judge, delivered the opinion of the court.

As there is nothing in the record indicating the point on which the decision of the cause was made to turn in the court below, we will consider those objections which have been urged against it by the appellant.

It is insisted that the sale was not invalid by the statute of frauds, first, because the written notice of it, published before it took place, was a sufficient note or memorandum in writing to satisfy the requirements of the statute. In support of this position, the case of Hobby v. Finch & Knapp (Kirby, 14) is referred to. The judgment in that case was not unanimous. The case was an early one, and yet stands alone. The statute says " the agreement, or some note or memorandum thereof, shall be in writing." Now we do not see how a written notice of a sale can be said to be an agreement, or a note or memo-

randum of an agreement. At most it is but the expression of an intention to sell, and is the sole act of the owner of the property.

Secondly, it is maintained that the auctioneer being the agent of both parties, his memorandum of the sale was sufficient to take it out of the statute ; that the law does not require this memorandum to be made at the moment of the sale, but that it may be made at a reasonable time thereafter. There is no doubt that at sales by auction, the auctioneer is regarded as the agent of both parties, and his memorandum of the sale, made at the time, is sufficient within the meaning of the statute. In the case before us, the memorandum of the sale was not made by the agent who conducted it until some month or more after the sale had taken place, and that too after this controversy had arisen. It is obvious that if a memorandum, made under such circumstances, satisfies the statute, then all sales at auction may be taken out of its provisions. Would it not be much safer to the parties to have the agent introduced as a witness, and sworn to the terms of the agreement, than that he should sign a memorandum of it some month or more after it had been made ? It is clear that the memorandum must be made within such time as shows it to have been a part of the transaction. Kent says, the writing the highest bidder's name in the memorandum of the sale by the auctioneer, *immediately* on receiving his bid and knocking down the hammer, is a sufficient signing within the statute of frauds, so as to bind the purchaser. The auctioneer is the agent to make the sale. On what principle can his authority be prolonged for a month after the sale ? If it can be extended for a month, why not for an indefinite length of time ? Why not bring him into court and let him make the memorandum there and swear to its truth ? The law will not let him prove the agreement by his oath. Will then this written statement of the terms of the contract be sufficient ? This involves the law in the absurdity of taking the unsworn statement of a witness for the sake of avoiding perjury. As the agent only had authority to make the sale, the

making of the memorandum, in order to be a valid act, must be in such time after as shows it to be a part of the transaction.

In the third place, it is contended that the delivery of the premises sold into the possession of the plaintiff was sufficient to take the case out of the operation of the statute. In the case of Bean v. Valle, (2 Mo. 109,) Judge McGirk says: "I understand the possession should be delivered, and the object and the reason of the delivery should be clearly made out to have been in pursuance of the agreement." In the case of Chambers v. Lecompte, (9 Mo. 569,) it is said, "the principle upon which part performance takes a case out of the statute is, that it would otherwise make the statute a means of practicing a fraud, and therefore nothing is now considered as a part performance which does not put the party into a situation which is a fraud upon him unless the agreement is performed. The ordinary illustration of the principle is the case of a vendee by a parol agreement put in possession. If the agreement be not valid in law nor equity, he is a trespasser and liable to an action. As a matter of defence, it is held that he can, under these circumstances, show the parol agreement by which he acquired possession, and the unwritten agreement being admissible for this purpose, is admissible throughout." This case is brought here on a refusal to review the facts as found; consequently we are at liberty to look into the evidence in relation to the alleged delivery of possession, and after an examination of it, we are clearly of the opinion that it furnishes no ground for saying that the plaintiff is in such a situation that it would be a fraud upon him unless the agreement is carried into effect. The witness, who testifies in relation to the delivery of possession, states, in answer to an inquiry made by the plaintiff of one of the defendants as to the time when he would get possession, he was directed to go and take it, and was informed that he would be defended in it. The witness, who it seems was a partner with the plaintiff in the purchase, although he afterwards released his interest, went to the land and found one

in possession of it, who was cultivating some potatoes, and who was bought out, and a tenant put into possession, who only continued two or three weeks on the land, and then abandoned it. Soon after this, the witness discovered another tenant on the land, but under whom or by what authority he entered he did not know. He was not the tenant of him or his partner, the plaintiff. Now, if evidence like this is sufficient to take a case out of the statute, then the statute is of very little use. The whole thing seems to have been a concerted scheme, planned with a view to obtain a pretext for an answer to a plea of the statute of frauds. If the possession was an object, why quit it so soon after it was obtained? How unlike this is to the case of a purchaser who is put into the possession of premises sold by an unwritten agreement, who, when afterwards called upon to defend his possession, offers the verbal contract as a justification of it. There is nothing in the evidence which shows that the plaintiff will be in a situation which is a fraud upon him, unless the agreement is performed.

Independently of the foregoing considerations, there are obstacles in the way of granting the relief sought, which can not be surmounted. Bullock, the grantor in the deed of trust, has an interest in this controversy. He was not made a party as he should have been. He is entitled to the surplus after payment of the debt secured by the trust. He required, by the terms of the deed creating the trust, that the land should be sold for cash in hand. The plaintiff claiming under that deed must be presumed to be cognizant of its contents. With what face can he ask a court of equity to enforce a contract, made in violation of the express terms of the deed under which he claims? So far from the land being sold for cash in hand, the arrangement for the payment of the purchase money has resulted in this protracted litigation, to the prejudice of the residuary *cestui que trust* in the deed. Although the plaintiff has failed to give him an opportunity of asserting his rights, by omitting to make him a party to the suit, yet his interest can not be overlooked. The law will not compel his trustees to

violate their trust, and then turn him around against them for redress, especially in favor of one whose claim is founded on a promise to violate a trust of whose terms he had full knowledge.

There is another consideration arising in this case which can not be overlooked. Davis, one of the trustees, is a party to this suit, and he insists on the defence growing out of the circumstance of his non-concurrence in the acts done by his co-trustee. He insists that he neither concurred in the arrangement by which cash in hand was not to be received for the land sold, nor did he give his consent that the plaintiff might enter into the possession of the premises. It is a general rule that trustees have equal power, interest and authority with respect to the trust estate. They can not, therefore, act separately; but they must all join in any sale, lease or other disposition of the trust property, and also in receipt of money payable to them in respect of their office. (Hill on Trustees, 305.) It is true that the deed gave the trustees authority to act separately or jointly in making the sale. But it seems they elected to act jointly, and accordingly gave notice of the sale in their joint names; and having so made their election, it was not competent for one of them afterwards to deny the authority of his co-trustee, and act alone. There may be cases in which the concurrence of a co-trustee might be presumed, but there is no room for it here in the face of the answer of Davis. This being a bill for specific execution of a contract, the reasons addressed to the consideration of the court by the defendant Davis are sufficient to induce a denial of the relief sought. Judge Ryland concurring, the judgment will be affirmed.