Springer v. Kleinsorge.

SPRINGER *et al.* v. KLEINSORGE, *Appellant.*

1. **Statute of Frauds:** PLEADING. In a suit for the specific perform-ance of a sale of land, if the defendant denies the contract, it is not necessary for him to plead specifically the statute of frauds. In such case the defense of the statute is sufficiently raised by a general denial.

2. ——: MEMORANDUM, SUFFICIENCY OF. A memorandum of a sale of land at auction is sufficient which contains the names of the vendor and purchaser, the terms of the sale, the amount bid and paid and a description of the land sufficient to enable the purchaser from the surrounding facts and circumstances to identify and locate it.

3. **Memorandum:** PURCHASER : AUCTIONEER. The insertion by the auctioneer, at the time of the sale and in the presence of the de-fendant, of the latter's name in the memorandum of sale as the pur-chaser, is a sufficient execution of the contract to bind him as the party to be charged thereby.

4. **Public Auction:** PUFFING AND BY-BIDDING. Puffing or by-bid-ding at a public auction is a fraud on the vendee.

5. **The evidence** in this case reviewed, and the sale held not bind-ing on the purchaser because of such by-bidding.

*Appeal from St. Louis Court of Appeals.*

REVERSED.

*Zack. J. Mitchell* for appellant.

(1) It is submitted respondents were not entitled on the evidence to recover upon their pleadings. The peti-tion avers and seeks to enforce the specific performance of a written contract between them and appellant, whereas *none was proven*, or shown to have an existence. Appell-ant's plea of fraud and by-bidding, was not in equity or law controverted or denied by the denial of "each and every material allegation therein [said answer] contained" —hence stood admitted, and appellant was entitled to the decree rendered in his favor by the *nisi prius* court.

(2) It appears from the transcript in the St. Louis

Court of Appeals that respondents only filed their motion for a new trial in the St. Louis county circuit court on the 28th day of August, 1880; and nothing appearing from the records but the *dictum* of the clerk that said motion was filed within "four days after decree," respondent's appeal should have been by said court dismissed.   *Lanham v. Beal*, 4 Mo. App. 566.

(3) The conduct of Thomas Nichols at the sale authorized the finding of the circuit court, and the court of appeals should not have disturbed it. *Smith v. Fruin*, 77 Mo. 499; *Russell v. Berkshoner*, 77 Mo. 417; *Masters v. Nally*, 61 Mo. 202; Pomeroy on Contracts, pp. 54 and 59.

(4) Whilst, as a general proposition, the statute of frauds must be specially pleaded, yet equity will not enforce mere verbal promises in the face of the statute. Pomeroy on Contracts, p. 207.

*R. M. Nichols* for respondents.

(1) If the reply "denying each and every allegation in said answer contained," was not a sufficient denial, the objection comes too late in this court. *Smith v. City of St. Joseph*, 45 Mo. 449; *State ex rel. v. Williams*, 77 Mo. 469; *Howell v. Reynolds County*, 51 Mo. 154; *Simmons v. Carrier*, 68 Mo. 421.   (2) The record recites that the motion for rehearing was made "within four days" after rendition of judgment. This should be construed to mean four judicial days—to which the respondent was entitled. *Nat. Bank v. Williams*, 46 Mo. 17; *Daubert v. Rocker*, 4 Mo. App. 590; *Bank v. Thomas*, 2 Mo. App. 367. A motion for rehearing is unnecessary in an equity case. *Butler v. Lawson*, 72 Mo. 227.   (3) There is no evidence to show by-bidding at the sale of lots 2 and 6, or at the sale at all, or that the supposed by-bidder, Nichols, bid upon lots 2 and 6, and the facts that Thomas W. Nichols purchased the first three lots at the sale, and afterwards, on

the same day, or same hour, sold two of them for 50 cents per acre less than he paid, cannot certainly establish by-bidding or fraud in the sale of lots 2 and 6 to appellant, when it does not even appear that he bid upon them at all. Nor can the low price testified to by the expert witnesses be any evidence of fraud or by-bidding, though it makes a general average of $26.50, for the reason that the amount the property brings at a public sale is the best known criterion of its value. *Harrison v. Town*, 17 Mo. 237; *Bean v. Valle*, 2 Mo. 126; *Holmes v. Hesh*, 9 Mo. 211. (4) The answer does not set up the statute of frauds, and, therefore, the contract as pleaded is admitted to be sufficient. *Gist v. Eubank*, 29 Mo. 248; *Weldbohn v. Robidoux*, 11 Mo. 660; *Cozine v. Graham*, 1 Paige 182; *Gardner v. Armstrong*, 31 Mo. 534; *Graff v. Foster*, 67 Mo. 512. The memorandum in writing was amply sufficient. *Wiley v. Robert*, 31 Mo. 215; *Briggs v. Munchon*, 56 Mo. 470. (5) A court of equity will decree specific performance if the vendor is able to make a good title at any time before final decree. *Suckett v. Williamson*, 37 Mo. 388. (6) If a purchaser does not avail himself of the knowledge of the means of information open to him as to the character and condition of the land, he cannot say that he was misled by representations of the vendor. Story's Equity, § 200, *et seq.*; *McFarland v. Carron*, 34 Mo. 196; *Langdon v. Green*, 49 Mo. 363; *Dunn v. White*, 63 Mo. 182. (7) An action of specific performance can be maintained by the vendor, and, under a general prayer of relief, the court can give whatever relief is proper. *Parris v. Halley*, 61 Mo. 453; *Ivory v. Murphy*, 36 Mo. 541; Story's Equity Juris., § 723, and cases cited; *Brown v. Haff*, 3 Paige 243; *Crary v. Smith*, 2 N. Y. 60; Bispham's Equity, § 389; *Dalzell v. Crawford*, 1 Parsons Select Cases in Equity, 37; *Finley v. A' Kin*, 1 Grant 83; *Kauffman's Appeal*, 55 Pa. St. 385; *Hamilton v. Hamilton*, 59 Mo. 232. (8) A court of equity, on appeal, can accord to the party that relief which he should have received at the hands of the trial court. *Derrier v. Derrier*, 58 Mo. 234;

*Jones v. Hart*, 60 Mo. 351; *Ringo v. Richardson*, 53 Mo. 397.

PHILIPS, C.—This is an action to recover from the defendant the amount alleged to have been bid by him for certain real estate sold in the name of Nicholas Springer and others at public auction. The answer tendered the general issue, and further pleaded that at said sale false and fraudulent bidders, known as by-bidders, through the connivance of plaintiff's testator, were present, and that false representations were then and there made by vendors, by reason of which defendant was misled into making a bid at said pretended sale.

On a trial before the court, without a jury, the court found the issues for the defendant, and dismissed the petition. From this judgment plaintiffs appealed to the St. Louis court of appeals, where the judgment of the circuit court was reversed. From this last judgment the defendant prosecutes this appeal.

I.   The statute of frauds is invoked in argument by the defendant. The court of appeals held that "the statute of frauds is not in the case at all because it is not pleaded." We cannot assent to this proposition. The petition avers a contract of sale respecting real estate. It is not averred whether the contract is in writing or not. The presumption, however, in such case is, that the contract is such as the law recognizes. If it appeared on the face of the petition that it was not in writing, duly executed, the petition would be demurrable. This fact not so appearing, the defendant, to avail himself of the statute of frauds, must raise the issue by answer. But it is not necessary that the answer should, in so many words, plead the statute *eo nomine*. "Where the defendant in his answer denies the contract, it is not necessary for him to insist upon the statute as a bar." *Wildbahn v. Robidoux*, 11 Mo. 660; *Hook v. Turner*, 22 Mo. 333–335. It is as fully raised by a general denial "as any other answer could raise it." *Wisnell v. Tefft*, 5 Kan. 263; Bliss on Pl., 353; *Allen v. Richard, ante*, p. 55.

. On such state of the pleadings the plaintiff, as said by Ryland, J., in *Hook v. Turner*, *supra*, "must produce legal evidence of the existence of the agreement, which cannot be established by parol proof." This logically results from the general denial authorized by the practice act. The general denial puts in issue every fact included within the allegations of the petition, which the plaintiff must prove in order to a recovery. *Northrup v. Miss. V. Ins. Co.*, 47 Mo. 435–444. In the action of replevin and of ejectment, under a general denial, the defendant may show that the claim of plaintiff is fraudulent and bad, and thus avoid the plaintiff's title. *Greenway v. James*, 34 Mo. 328; *Bobb v. Woodward*, 42 Mo. 488; 25 Wis. 35–36; 3 Bibb 216. The answer in this case contains, first, a general denial of the allegation of the petition. It is true, it pleads other matters of special defence, but the new matter is in nowise inconsistent, in contemplation of the practice act, with the general denial. They can well exist together in point of fact and law. *Nelson v. Brodhack*, 44 Mo. 596.

This construction of the pleading in this case is in no wise in conflict with the cases of *Gardner v. Armstong*, 31 Mo. 535; *Rabsuhl v. Lack*, 35 Mo. 316; and *Graff v. Foster*, 67 Mo. 512, cited by the court of appeals in support of its ruling. In the first case cited the court simply holds, that the petition was not demurrable for failing to recite that the contract was in writing. That was matter of defence to be raised by the answer. It does not say that the question would not be well raised, under our present practice act, by the general issue. So in the case in 35 Mo., the answer admitted the indebtedness without pleading the statute. And in *Graff v. Foster*, an examination will show that the answer did not deny the contract, but merely put in issue the indebtedness. To deny the indebtedness is no denial of the existence of the contract out of which the petition avers the indebtedness arose. *Engler v. Bate*, 19 Mo. 543.

II. The question next recurs, was the contract in

Springer v. Kleinsorge.

question.evidenced by some writing or memorandum sufficient to save it from the operation of the statute of frauds? The memorandum is as follows: "Auction sale of lots in the subdivision of the Wilson farm, Thursday, October 2nd, 1879. Terms:—one-fourth cash; balance in one, two and three years, with six per cent. interest, payable annually and secured by deed of trust on the property, said sale being made for N. Springer and Thomas Boylan.

| No. of Lot. | Name of Purchaser. | Price per acre. | Cash Paid. |
|---|---|---|---|
| 12. | Thomas W. Nichols, . . . | $41.00 | ———— |
| 7. | Frederick Wm. Kroner, . . | 32.50 | $20.00 |
| 8. | Herman Henry Engleki, . . | 39.50 | 20.00 |
| 11. | Lewis Vesper, . . . . . | 44.25 | 20.00 |
| 2 & 6. | August Kleinsorge, . . . | 30.00 | 20.00 " |

The evidence showed that this sale was extensively advertised, fully describing the property, and that the clerk of the auctioneer, under the eye and sanction of the auctioneer, made this memorandum at the time of the sale, inserting the purchasers' names and affixing the name of the auctioneer. Wherein, then, consists the infirmity of this memorandum? The defendant has pointed out in argument no specific objection; but contents himself by assuming that it is bad. The memorandum contains the names of the vendors and the purchaser, the terms of the sale, the amount bid and paid. While the description of the land is not as full as it might have been, the surrounding facts and circumstances were such as to enable the purchaser to identify and locate the lots. Cozzens, a witness, testified that he surveyed the land and subdivided it into lots, made a plat thereof and filed the same in the proper office, giving the number of acres in each. The parties were near the land at the sale, and its location was well understood at the time. This enabled the parties to ascertain and identify lots 2 and 6 stricken off to defendant. This is all the law requires in the matter of description. Browne Stat. of Fr., § 385; *Long v.*

*Wagoner*, 47 Mo. 178; *Tetherow v. Anderson*, 63 Mo. 96; *Briggs v. Munchon*, 56 Mo. 467.

The insertion by the auctioneer of the defendant's name as the purchaser, if done at the time in his presence, was a sufficient signing or execution or the contract to make it obligatory upon him as the party to be charged thereby. Browne Stat. of Fr., § 351; *McComb v. Wright*, 4 John. Ch. 659; *Gill v. Bicknell*, 2 Cush. 358; *Gill v. Hewitt*, 7 Bush (Ky.) 10; *Tatem v. Holliday*, 59 Mo. 422; *Barclay v. Bates*, 2 Mo. App. 139.

III. The remaining defence interposed to the action is, that the sale is voidable because of secret or by-bidding, at the instance of plaintiffs, under the circumstances of fraud, as against the defendant. The circuit judge who heard the case, was satisfied there was such by-bidding, within the prohibition of the law, and so declared in his opinion filed in the case. The court of appeals, on a review of the evidence, were of a different opinion, and maintained the integrity of the sale.

So great a jurist as Shaw, C. J., in *Gill v. Bicknell*, *supra*, expressed a strong inclination to the opinion that an action of this character is on the law rather than the equity side of the court. He said: "The plaintiff's only ground of complaint is, that the defendant did not pay the money, and there seems no good reason why an action at law for the money would not afford the plaintiff all the remedy he can ask." And we have held in *Carter v. Prior*, 78 Mo. 222, that an equitable defence to a common law action will not have the effect of changing such action into a suit in equity. If this view should be applied to this case the finding of the circuit court on the question of fact would not be reviewable here. But waiving this, and treating the case as one in equity, after a careful review of the evidence we regret our inability to reach the same conclusion as the court of appeals. Whilst it is true, as asserted by the learned judge who spoke for that court, that on appeal, in an equity case, it is the province and duty of the appellate court to look into the evidence,

as preserved in the bill of exceptions, and to follow the conclusion which its own judgment and conscience dictate, yet it is, also, the recognized practice of this court to defer much to the conclusion reached by the trial judge on a matter of fact, especially where there be any material conflict of evidence. *Chouteau v. Allen*, 70 Mo. 336; *Chapman v. McIlwrath*, 77 Mo. 43; *Royle v. Jones*, 78 Mo. 403. And this for the obvious reason that the trial judge had the incomparably better opportunity of judging of the intrinsic worth of the evidence, and the credibility of the witnesses. Even if the opposite counsel who prepares the bill of exceptions, not ordinarily more in his adversary's interest than his own, should strive never so hard to do justice, it is impossible that he should be able to convey on paper to this court that silent, mysterious, yet often irresistible impression, which the eye, the countenance, voice, and the whole manner of the witness on the stand stamps on the mind of the jury in the box and the judge on his bench.

If full credence should be given to the general asseverations of Springer and Nichols, the conclusion would seem just that there was no conspiracy or combination between them to impose on any bidder. But this case, in my opinion, illustrates a fact often falling under the observation of the practitioner and the judge, that where fraud does exist it seems to be irrepressible, and discovers itself in such unmistakable form and mien as to outweigh the loudest protestations of innocence by its perpetrators. *Massey v. Young*, 73 Mo. 273. The evidence shows that Nichols held a deed of trust on 320 acres of land, embracing the two lots, 2 and 6, in controversy, to secure to him the payment of $4000 owing by Springer and others. Instead of pursuing the ordinary method of collecting his claim by foreclosure of the mortgage, it seems fairly inferable, that by arrangement between creditor and debtor resort was had to a sale by public auction. The sale was liberally advertised. The land was laid off into six lots. Nichols attended the sale and bid on the property, as was

testified in his behalf, in order to protect his interest as such creditor. Why he should have attended and bid and bought in for any such purpose is curious, in view of the fact that his debt was secured by a prior recorded mortgage on this property. The whole tract contained 320 acres. Lots 2 and 6 contained about 59 acres, leaving 261 acres. What the quantity was embraced in the other four lots respectively does not affirmatively appear. It is but reasonable, however, to assume that they contained on an average $65\frac{1}{4}$ acres. Now the declared object of Nichols in bidding at this sale was to protect his debt of $4000. He bid in the first lot sold at $41.00 per acre, which would amount to $2675. He then bid in the next lot at $32.50 per acre, making $2160. The aggregate of these two purchases was $4835, which exceeded the debt due him by $835. And yet the undisputed evidence is, that he, also, bid off the third lot. The memorandum of sale relied on by plaintiff to take the case out of the condemnation of the statute of frauds, states the amount of this bid to be $39.50 per acre. But giving him the benefit here of the other evidence, he bid off this lot at $30 per acre, amounting to $1965, making the aggregate excess of his purchase above his debt $2800. This is as remarkable as it is inexplicable on the basis of his theory for bidding at the sale.

Again, both the auctioneer and the clerk of the sale testified that the memorandum of sale, with the names of the purchasers, the price bid, and amount paid down, was made out at the time and place of the sale. Yet the uncontradicted testimony of Kroner and Engleki is, that they bought or took the land from Nichols *after* the auction sale, and one of them after they had left the ground. And most remarkable, the memorandum of sale made by the auctioneer, through the clerk, shows Kroner and Engleki to be the purchasers and bidders for the lots bid in by Nichols. There was, therefore, some *"post-mortem"* doctoring of the record. And again, the uncontradicted evidence is, that Nichols bid $30 per acre for the third

Springer v. Kleinsorge.

lot sold, and yet, after the sale he let Engleki have it at $29.50 per acre; and the memorandum of sale by the auctioneer shows that this lot was struck off to Engleki at $39.50 per acre. No explanation whatever is offered of this glaring discrepancy. We cannot, in the face of the record, act upon the conjecture that the figures, $39.50, inserted in the memorandum, are a clerical mistake. *Brandenberger v. Easley*, 78 Mo. 659. Was this large sum inserted, when the parties came to making up the record, to give color to the reasonableness of defendant's bid? Or even if intended to be $29.50, as represented, the price at which defendant took the lot from Nichols, what had the auctioneer, whose duty it was to make and preserve a faithful record of his proceedings had at the sale, to do with the transactions between others? Any fair view we may take of this transaction forces the conclusion of jugglery and accommodation between Nichols and Springer and the auctioneer, inconsistent with open and honest dealing.

Did Nichols lose the difference between his actual bid and the sum for which he sold to Engleki? The record is ominously silent. His whole conduct contradicts his pretentions that in bidding he was actuated solely by a desire to protect his own interest. That he was acting in concert with and for the benefit of Springer, and to puff the land to influence bidders, is painfully apparent. That he bid in the first lot, which yet stands in his name, for the use of Springer, is difficult to disbelieve. The deed of trust between them has never been satisfied. They concede there is $1000 yet owing thereon to Nichols, although Nichols was attending this sale to secure his money. Years afterwards, although the sums realized from the sales and notes taken thereat should long since have been paid off the mortgage debt, his debt, is unsatisfied. No deed appears to have ever been made by Springer to Nichols for the lot bid in by him. That they had a secret understanding between them touching this whole matter is too palpable for any mere generality of expression to conceal.

But it is said that Nichols did not bid on the lots bid in by defendant. Story on Sales, sec. 482, intimates that, if the next bid preceding that of the buyer be by other person than a by-bidder, sometimes designated "white bonnets, or decoy ducks," the sale might not be voidable by the buyer. But it is clear that he did not think such doctrine wholesome. And I quite agree with the learned chancellor in *Nat'l Bk. of the Metropolis v. Sprague*, 5 C. E. Green (N. J. Eq.) 165, that: "It would, perhaps, have been more just to hold in all cases where sham-bidders are employed by those interested to enhance the price, that it is a fraud upon purchasers, and that such sale is void. The proper plan to save the sacrifice of the property in sales not judicial, is, that the owner should reserve the right to make one bid, or should put it up at the lowest price at which he is willing to sell, then it is a fair auction, though, perhaps, few would be willing to bid. But if the owner, or those interested in the sale, should announce that puffers for them would bid in the guise of real bidders, no one at all would bid."

The sales of all the lots in this instance were a continuous transaction, so united in purpose, and so linked together in time, that they were quite inseparable. The one illustrates and manifests the general fraudulent purpose, and the proof of the one goes to establish the other. *Erfort v. Consolus*, 47 Mo. 268. After the fowlers had spread their net, by the previous by-bidding, they might well stand aside to see their game walk into the snare. We quite agree, too, with the finding of the circuit judge, that the actual value of the lots put on to the defendant was greatly below the price bid by him. The character of the defendant's witnesses, touching the value of this property, is more reliable, because they spoke more directly from their actual knowledge of the condition of the timber and land. The very effort made in this suit to compel the defendant to stick to his bargain indicates that the plaintiffs regard the land as well sold. The evidence further shows that, as a means of inducing compe-

tition among *bona fide* bidders, it was publicly announced at the opening of the auction, there would be no by-bidding. This assurance was violated. Justice and good morals demand that such a sale should not stand. The offer of property at public auction is itself a proclamation by the seller that the highest bidder, in a fair and open competition, is to obtain the property. Any combination or secret understanding between vendor and others, calculated to thwart this end, is a wrong and a fraud upon the innocent. Vast amounts of property are and will be disposed of at such sales. It is the policy of the law, therefore, to secure such sales against every species of undue influence. *Gardner v. Morse,* 25 Mo. 143 ; *Levi v. Levi,* 6 C. & P. 239. Puffing or by-bidding is a fraud on the vendee. *Smith et al. v. Greenlee,* 2 Dev. (N. C.) 128.

The conclusion reached by us in no wise conflicts with the doctrine maintained by courts of high authority, that by-bidding may be sanctioned in auction sales, "if it be *bona fide,* and for the sole purpose of preventing a sacrifice of the property." In such a case the course of fairness and common honesty should impel the vendor to so announce at the sale. It must follow that, in our judgment, the action of the circuit court was right, and the judgment of the court of appeals should be reversed, and the cause remanded, with directions to the court of appeals to enter a judgment affirming the judgment of the circuit court.

Martin, C., having been of counsel for the plaintiff, did not sit in this case. Ewing, C., concurs.