Hackett v. Watts.

HACKETT *et al.* v. WATTS *et al.*; BICKEL, *Appellant.*

Division Two, April 3, 1897.

1. **Lien**: DEPOSIT OF TITLE DEEDS. A mere deposit of title deeds does not create any lien upon the real estate.

2. **Pleading**: STATUTE OF FRAUDS: GENERAL DENIAL. The question of the statute of frauds is raised by a general denial in an action on the contract.

3. **Statute of Frauds.** A parol contract to assign, as security, a contract for a deed, and to execute a mortgage when said deed has been delivered, is within the statute of frauds.

4. **Equitable Mortgage.** A written assignment of a contract for a deed is an equitable mortgage.

5. ———: SURETIES: SUBROGATION. Where a contract for a deed was assigned to a creditor to secure the payment of three notes, and two of said notes were subsequently paid and the lien released as to them, the sureties on the unpaid note, upon paying the same, are entitled to be subrogated to all the rights under such assignment that the original creditor had.

6. ———: ———: ———: PURCHASER: NOTICE. A purchaser of land, who, at the time of purchase, has notice of an equitable mortgage given to secure the payment of debts, takes the same subject to the rights of the creditor so secured, and of sureties subrogated to the rights of said creditor.

*Appeal from Clinton Circuit Court.*—HON. WILLIAM S. HERNDON, Judge.

AFFIRMED.

*S. H. Corn* for appellants.

(1) The court erred in permitting plaintiffs to prove their contract with Watts by parol testimony; that contract, so far as it was intended to create a lien upon the land in question to indemnify plaintiffs as sureties upon Watts' note to the bank, was clearly within the operation of the statute of frauds, and no action can be

maintained upon it. R. S., sec. 5186; *Curle's Heirs v. Eddy*, 24 Mo. 117–122; *O'Neil v. Capelle*, 62 Mo. 203–209; *Wooldridge v. Scott*, 69 Mo. 669; *Chambers v. Lecompte*, 9 Mo. 575; *Price v. Courtney*, 87 Mo. 387–395; *Vanstone v. Goodwin*, 42 Mo. App. 39; *Bender v. Zimmerman*, 122 Mo. 194–202. (2) Conceding that Watts deposited his contract with the Missouri Wesleyan Institute in the bank in compliance with his agreement with plaintiffs, that did not create a lien on the land. The doctrine that the deposit by a debtor with his creditor of the title deeds to his land creates a lien in equity upon the land, has never prevailed in the United States. 1 Hillard on Mort., ch. 23, p. 457; 1 Jones on Mort. [3 Ed.], ch. 5, sec. 185; 3 Pomeroy Eq., ch. 7, sec. 7, p. 275, secs. 1265, 1266; *Curle's Heirs v. Eddy*, 24 Mo. 122. This doctrine required an actual, *bona fide* and immediate deposit of the title deeds with the creditor himself; a parol agreement to deposit would not be enforced. 4 Kent 149, 150; 2 Story's Eq., sec. 1020. (3) Plaintiffs relied solely upon the honor of Watts, and not upon the validity or value of any security promised. They took his word for everything, and signed the note without requiring any preliminary act. Whatever failure there was on Watts' part was simply a breach of promise and this furnishes no ground for the interference of a court of equity with the operation of the statute of frauds. *Chambers v. Lecompte*, 9 Mo. 575–578; 1 Story's Eq. Jur. [10 Ed.], 755, sec. 760; *Wooldridge v. Scott*, 69 Mo. 672. (4) Plaintiffs certainly have no higher claim to an equitable lien on this land than they would have had if they had bought it and paid their $5,000 to Watts as purchase money, relying on his parol promise to make them a deed; and the authorities all agree that such part performance will not take a case out of the operation of the statute. 1 Story's Eq. [10 Ed.], 755, secs. 760, 761; *Galway v.*

*Shields*, 1 Mo. App. 546; *Id.*, 66 Mo. 313; *Lydick v. Holland*, 83 Mo. 703. (5) The demurrer to the evidence ought to have been given. The bank of Watson lost its right of action against the plaintiffs as sureties upon its notes against Watts, by its misconduct in relation to the securities deposited by Watts for their protection. It detained them for its own benefit until after the sale of the land. *Ferguson v. Turner*, 7 Mo. 497; *Rice v. Morton*, 19 Mo. 263–280; *Bank v. Matson*, 24 Mo. 333; *Taylor v. Jeter*, 23 Mo. 244; *Dodd v. Winn*, 27 Mo. 501; *Smith v. Rice*, 27 Mo. 507; *Biggerstaff v. Hoyt*, 62 Mo. 481; *Triplet v. Randolph*, 46 Mo. App. 569; *Bank v. Bartle*, 114 Mo. 276; *Priest v. Watson*, 75 Mo. 310. (6) Having predicated their action upon their contract with Watts, plaintiffs can not recover upon a contract between Watts and the bank. *Sumner v. Rogers*, 90 Mo. 324; *Newham v. Kenton*, 79 Mo. 382; *Muenks v. Bunch*, 90 Mo. 500. (7) The memorandum deposited with the bank at the time Watts obtained the second loan was not sufficient to create an equitable lien, or other interest in the land claimed. It was uncertain in every essential, and utterly meaningless unless aided by parol testimony, and that is not permissible. Brown on Statute of Frauds, sec. 371; Fry on Spec. Per. Cont., sec. 325; *Fox v. Courtney*, 111 Mo. 147; *Ringer v. Holtzclaw*, 112 Mo. 519; *Rucker v. Harrington*, 52 Mo. App. 481; *Weil v. Willard*, 55 Mo. App. 376. (8) The depositing of the contract was a pledge only of the instrument itself, and created no equitable mortgage or lien upon the land, enforceable against a purchaser even with notice. 3 Pom. Eq., *supra*.

*Lewis & Ramsay* for respondents.

(1) There is no controversy about the intention to secure plaintiffs by pledging or transferring Watts'

equitable interest in the Cameron property as evidenced by his contract with the Wesleyan Institute. It was deposited with the bank as agreed upon, and was subsequently assigned in writing to the bank which held the note on which they were sureties. It was the well defined purpose to appropriate this property to the security of the debt, and, whether formal or not, is binding in equity and may be enforced. 3 Pomeroy's Eq., secs. 1235–1237; *McQuie et al. v. Peay et al.*, 58 Mo. 56–58; *Martin v. Nixon*, 92 Mo. 26–34; *Ketcham v. St. Louis*, 101 U. S. 306–318; 6 Am. and Eng. Ency. of Law, 681–682, and notes; Jones on Mort. [3 Ed.], secs. 163 to 170. And it may sometimes be done by parol. *Id.*, secs. 164 and 165. (2) The assignment by the vendee of a contract or certificate of purchase of lands creates a mortgage and "the rules applicable to a mortgage of real property govern it, both as to the effect of it and the mode of enforcing it." 1 Jones on Mort. [3 Ed.], sec. 172. Property or its proceeds may be followed so long as it can be identified. *Am. Sugar Ref. Co. v. Fauch*, 27 L. R. A. 75. Equitable interests may be transferred by parol where party is put in possession. *Rosenberger v. Jones*, 118 Mo. 559–566; *Grumley v. Webb*, 48 Mo. 562. A mortgage permit at request of mortgagor with verbal promise of lien creates a lien. *Moore v. Lindsley*, 52 Mo. App. 480; *Wilson v. Brown*, 13 N. J. Eq. 277; *Norton v. Highleyman*, 88 Mo. 621–624. (3) Watts' interest in the Cameron property was evidenced by an unacknowledged written contract, only purporting to create an equitable title, and not entitled to record; that and his possession under it represented his whole title. Nothing rightly could appear of record and the mere deposit of the contract as collateral security both on principle and authority would create an equitable lien. 6 Am. and Eng. Ency. of Law, 683, and note; Bispam's Eq. [2 Ed.], sec. 357; *Jarvis v.*

*Dutcher*, 16 Wis. 307; 1 Jones on Mort. [3 Ed.], secs.
179 to 188.   (4) A vendee who advances money to-
wards purchase of lands upon a verbal contract where
vendor refuses to convey, may have a lien upon the
lands for the amount paid, which is not a more persua-
sive equity than the one at bar.   *Pratt v. Clark*, 57 Mo.
189; *Stewart v. Wood*, 63 Mo. 252.   (5) If this were a
case where the defense of the statute of frauds was oth-
erwise warranted it could not avail as a defense here
for the reason that it has not been pleaded as a defense.
*Maybee v. Moore*, 90 Mo. 340.   (6) If the deposit of
the contract with the bank of Watson for the purpose
of securing plaintiffs, created an equitable lien, then the
subsequent assignment to the bank with notice of that
fact simply made the bank a trustee for that purpose
to extent of plaintiff's liability.   *Bailey v. Winn*, 101
Mo. 649–655; *Stillwell v. Hamm*, 97 Mo. 579.   If such
deposit did not have that effect and the assignment
simply secured the bank on all claims, then plaintiffs
having paid the debt would be entitled to be subro-
gated to the place of the bank.   *Schell City Bank v. Reed*,
54 Mo. App. 94; *Benne v. Schnecko*, 100 Mo. 250–257.
And all other claims to the bank having been adjusted
and no one else having an interest under the assign-
ment, the whole of the collateral remaining would in
equity belong to plaintiffs to secure them.   *Furnold v.
Bank*, 44 Mo. 336–339; *Clark v. Bank*, 57 Mo. App.
277–283.

BURGESS, J.—This is an action by plaintiffs to
recover against the defendant Watts the sum of
$5,586.65, paid by them to the Watson Bank as surety
for said Watts; to be subrogated to the rights of said
bank in and to a certain contract for the purchase of a
tract of land therein described, one life policy of insur-
ance and four hundred shares of stock in the Sioux

Valley Stone Company, deposited by said Watts with said bank as collateral security for said debt; to set aside a certain deed from the Missouri Wesleyan Institute to the defendant Bickel for said land; that he be declared to hold title to same for the use and benefit of plaintiffs; and that said land, policy of insurance, and shares of stock be sold, and that the proceeds arising from such sale be applied to the payment of their demand.

On the second day of March, 1891, defendant Watts purchased from the Missouri Wesleyan Institute a tract of land in the city of Cameron, Missouri, at the agreed price of $1,000. The purchase money was paid at the time, but instead of making Watts a deed for the land the Institute executed to him an instrument of writing by which it obligated itself to execute to him a deed in fee simple by deed of general warranty upon the payment of the purchase money. This instrument, although not acknowledged, was filed for record in the recorder's office of Clinton county, Missouri, on the twenty-first day of September, 1892. Watts built a house on the land at a cost of $5,000 to $6,000, and moved into it with his family.

On August 18, 1891, Watts, desiring to borrow $5,000 from said bank, applied to the plaintiffs to become his sureties on a note for that amount, and to indemnify and save them harmless from their liability he proposed to transfer to them his contract for the purchase of said land, together with his life insurance policy, and certificates for two hundred shares of stock in the Sioux Valley Stone Company. The trial court found that under these conditions plaintiffs signed the note as Watts' sureties, and that he received the money on the note, and at that time deposited with the bank said certificate of stock and said contract.

Thereafter, on September 8, 1891, said Watts bor-

rowed of said bank the additional sum of $10,911 on two notes, one for $5,000 and the other for $5,911, upon which said last named notes one J. M. Poorbaugh was surety. On the same day said Watts signed and deposited with said bank the following instrument of writing, to wit:

"Watson, Mo., September 8, 1891. The certificates of stock of the Sioux Valley Stone Company herein described as certificate No. 83 for 200 shares, and certificate No. 82 for 200 shares, and certificate No. 81 for two hundred shares, and certificate No. 58 for 100 shares, and certificate No. 57 for 100 shares, and certificate No. 95 for 200 shares of the said company (Del. to Watts 12–9–91) and policy in the New York Life Insurance Company No. 417989 for $5,000.00, an article of agreement hereto attached, are deposited with the Bank of Watson to secure any indebtedness that now appears or shall come against me in any way. LOTT WATTS; witness, J. M. POORBAUGH."

The bank at the time said instrument of writing was deposited with it had knowledge of the previous agreement of Watts with plaintiffs by which said contract was to be held by said bank for the purpose of securing plaintiffs as sureties upon the note signed by them. The notes given by Watts and Poorbaugh were adjusted and settled before the commencement of this suit, and all collaterals released by reason of their adjustment.

The policy of insurance was permitted by Watts to lapse and become forfeited by reason of his failure to pay premiums, and as only one premium was paid on it after forfeiture it was worthless. The stock in the stone company turned out to be worthless also.

On the thirty-first day of August, 1892, while said contract and other collaterals were held by said bank, Watts, in consideration for the exchange of two hun-

dred shares of stock of said stone company, agreed in writing to sell said Cameron property to the defendant Bickel, and said Bickel thereafter, on the fourteenth day of October, 1892, procured from said Missouri Wesleyan Institute a warranty deed for the consideration, as recited in said deed, of $1,000. Bickel had notice at the time of contracting with said Watts, as well also as at the time of receiving the deed from the Institute that the contract between Watts and the Institute, in regard to the Cameron property, was held by the bank of Watson as collateral security for the payment by Watts of the note upon which plaintiffs were sureties.

The court made a finding of facts substantially as herein stated, and in effect held that the deposit by Watts in the Watson Bank of the policy of insurance, certificate of stock in the stone company, and contract with the Institute for the Cameron property at the time he received the money on the note upon which plaintiffs were sureties, and the instrument of writing of date September 8, 1891, was a legal assignment of the policy of insurance, and the certificate of stock, and an equitable assignment to the bank of the contract between Watts and the Institute for a deed to the Cameron property of which Bickel had notice at the time he contracted with Watts for the property, and received a deed from the Institute therefor, and that, the last two notes having been liquidated, plaintiffs were entitled to the benefit of all the collaterals, and having paid off the debt upon which they were sureties were entitled to be subrogated to the rights of the bank. The court rendered the following judgment:

"It is therefore ordered and adjudged that the plaintiffs recover of and against the defendant Watts, the sum of five thousand, nine hundred and sixteen and forty-five one hundredths dollars, with interest at

eight per cent per annum and for all costs of this suit; that the same be declared a lien upon said Cameron property and said certificates of stock Nos. 57, 58, 81 and 82; that plaintiffs be subrogated to all interests or liens of said bank upon said property, and that such lien be foreclosed against all parties to this suit.  It is further ordered that said certificates of stock and said Cameron property be sold by the sheriff of this county for the purpose of satisfying the amount of said judgments and costs, together with costs of sale, and that an order of sale issue for that purpose; that from the proceeds of said sale there be paid, first, the costs and expenses of such sale, next, the amount of said judgment and costs, and that the surplus, if any, be paid to John M. Bickel.''

John M. Bickel then filed motions for new trial and in arrest, which were overruled, and he saved his exceptions and brings the case to this court by appeal.

It is insisted by appellant that the court erred in permitting the plaintiffs to prove their contract with Watts by parol testimony; that the contract in so far as it was intended to create a lien upon the land in question to indemnify plaintiffs as sureties upon Watt's note to the bank, was within the operation of the statute of frauds, and no action can be maintained upon it.

The petition alleges: "That at the time of the execution of said note [upon which plaintiffs were sureties] and as inducement to obtain the signatures of the plaintiffs thereon, said defendant Watts stated and represented to the plaintiffs that he had recently purchased certain lots or tracts of land from the Missouri Wesleyan Institute, a corporation having its place of business at Cameron, in the State of Missouri, and upon which said property said Watts was at the time engaged in making valuable improvements, and that he

held a contract for the purchase of said property which he would assign to plaintiffs to secure them as such sureties, and that as soon as he obtained a formal deed therefor he would execute to plaintiffs a mortgage on such property to secure them, and would, in addition, turn over to them a certain policy of life insurance, etc." The allegations with respect to the assignment by Watts to plaintiffs of the contract for a deed to the Cameron property, and the promise by him to execute to them a formal mortgage on the property as soon as he. obtained a deed therefor being in regard to real estate, the defendant properly raised the question of the statute of frauds by denying the contract. It was "not necessary for him to insist upon the statute as a bar." *Wildbahn v. Robidoux*, 11 Mo. 660; *Hook v. Turner*, 22 Mo. 333; *Springer v. Kleinsorge*, 83 Mo. 152. "It is as fully raised by a general denial as any other answer could raise it." *Wiswell v. Tefft*, 5 Kan. 263; Bliss on Pleading, 353; *Allen v. Richard*, 83 Mo. 55; *Springer v. Kleinsorge*, *supra; Bernhardt v. Walls*, 29 Mo. App. 206.

As the evidence showed that the promise by Watts to plaintiffs to execute to them a mortgage on the Cameron property was by parol only, it was clearly within the statute of frauds and non-enforcible. That statute (sec. 5186, R. S. 1889) provides that no action shall be brought upon any contract for the sale of lands, tenements, hereditaments, or of any interest in or concerning them, unless the agreement upon which the action shall be brought, or some memorandum or note thereof shall be in writing and signed by the party charged therewith, or some other person lawfully thereto authorized. Under this statute it has been repeatedly held by this court that such contracts, as alleged, come clearly within the statute. *Curle's Heirs v. Eddy*, 24 Mo. 117; *O'Neill v. Capelle*, 62 Mo. 203;

*Wooldridge v. Scott*, 69 Mo. 669; *Chambers v. Lecompte*, 9 Mo. 566; *Price v. Courtney*, 87 Mo. 387; *Bender v. Zimmerman*, 122 Mo. 194.

Moreover, there was no evidence that defendant had notice of such an agreement if one really existed, consequently he could not have been in any way affected thereby.

But the petition further alleges that: "On the eighth day of September, 1891, said defendant, Lott Watts, delivered said contract of purchase for said lands, said insurance policy, and also certificates representing one thousand shares of the capital stock of the Sioux Valley Stone Co. to said Watson Bank to secure said bank upon any and all liabilities of said Watts to said bank, and especially to secure the plaintiffs and said bank upon said five thousand dollar note, upon which plaintiffs were sureties; that said Watts at the time executed a written memorandum or transfer in writing of said property and instruments of writing, and delivered same with such contract, policy of insurance and certificates of stocks to said bank for the purpose aforesaid; that said bank was informed of and knew that it was the agent of said Watts to transfer said policy of insurance and said contract for the purchase of said lands to these plaintiffs to secure them as such sureties, and receive them for that purpose, as well as for further and better security. It was also further understood between said Lott Watts and said bank that four hundred shares of said stock should be held for benefit of these plaintiffs on account of such suretyship. Plaintiffs further state that said stock is of very little or no value, and that said policy of insurance is of very little value, worth not more than three or four hundred dollars, except upon the condition of said Watts' death and the continued payments of yearly premiums thereon during his lifetime, so

that said stock and said policy of insurance are of but little value as security for these plaintiffs; that said lands with the improvements thereon are worth from three thousand to six thousand dollars." It is also averred in the petition that Bickel purchased the Cameron property with full knowledge of all the facts alleged.

These allegations are put in issue by the general denial in the answers, and in order to entitle plaintiffs to recover, it devolved upon them to show that Watts assigned to the Watson Bank in writing as collateral security, his contract with the Missouri Wesleyan Institute for a deed to the Cameron property, and that appellant had notice of said assignment at the time of his purchase of said property from Watts, or notice of such facts as would have put an ordinarily prudent person under such circumstances upon inquiry.

The controlling questions, therefore, are as to whether or not the deposit of the contract between Watts and the Missouri Wesleyan Institute for a deed to the Cameron property with the Watson Bank as collateral surety for the loans received by Watts from the bank, was, under the instrument of writing filed with it, an equitable assignment to the bank of that contract, and if so whether plaintiffs were entitled to be subrogated to the rights of the bank upon the payment of the note upon which they were sureties, and the payment of the other notes by Watts, for which it had also been deposited as surety. There can be no question that the purpose of Watts in making the deposit was for the benefit of his sureties, and to protect them from any damage that they might sustain by reason of having the notes to pay, nor do we think there is any question that plaintiffs were entitled to all the collaterals after the other notes upon which they were not

sureties had been liquidated by Poorbaugh, and his interest in the collaterals released to the bank. The evidence showed and the court found that Bickel knew that the contract, insurance policy, and the four hundred shares of the Sioux Valley Stone Company stock had been deposited by Watts with the Watson Bank as collateral security for the payment of the note to the bank upon which plaintiffs were sureties at the time he contracted with Watts for the purchase of the Cameron property, and received a deed therefor from the Missouri Wesleyan Institute, so that he was in no sense an innocent purchaser.

But defendant insists that the depositing of the contract with the bank was not under the circumstances an equitable assignment of that contract, which if true, it must be conceded that plaintiffs have no standing in court.

It has always been held in England that a lien was implied upon the deposit of title deeds to land upon a loan of money, and while the same rule has been announced by some courts in this country (*Gale v. Morris*, 29 N. J. Eq. 222; *Griffin v. Griffin*, 18 N. J. Eq. 104; *Hackett v. Reynolds*, 4 R. I. 512; *Rockwell v. Hobby*, 2 Sandf., ch. 9; *Jarvis v. Dutcher*, 16 Wis. 307); the better doctrine seems to be that the mere deposit of title deeds should not be regarded as constituting any lien upon real estate, the reason being that such a rule "would be in conflict, both with the universally established system of public registration and the statute of frauds." 6 Am. & Eng. Ency. of Law, 683; *Meador v. Meador*, 3 Hisk. (Tenn.) 562; *Gothard v. Flynn*, 25 Miss. 58; *Shitz v. Dieffenbach*, 3 Pa. St. 233; *Vanmetter v. McFaddin*, 8 B. Mon. (Ky.) 438.

There is a very marked difference, however, between a deed to land and a bond or contract for a deed upon conditions therein specified which have been complied

with.   In case of the deed the title to the property is thereby vested in the grantee, while in the other case the legal title remains in the vendor, while the equitable title is in the vendee.   The owner of the fee can not create a lien upon the land by simply depositing his deed as security for money borrowed, because such a contract would come within the provisions of the statute of frauds, 5186, *supra.*   In the case in hand the purchase money had been paid, and the terms of the contract complied with on the part of Watts, so that the Missouri Wesleyan Institute held the title to the property in trust for him.   That the contract was assignable in writing, and that Watts could have given a mortgage on the land, which would have operated as an assignment of the contract is perfectly clear, but it does not follow that it could be transferred by parol so as to entitle the transferee to its benefits, or to a deed to the property.   The question then is:   Did the instrument of writing of September 8, 1891, signed by Watts, operate as an equitable assignment of that contract?   This of course depends in a large measure upon the proper construction to be given to that instrument.

After mentioning the shares of stock and policy of insurance, it says:  "An article of agreement hereto attached and deposited with the Watson Bank to secure any indebtedness that now appear or shall come against me in any way."   The contract is referred to, and made part of it, and in the contract the property is specifically and definitely described.

The deposit of the contract with the bank as collateral security for money borrowed by Watts, even without any express agreement, certainly meant something; it was not a mere empty form.   Then what could have been his purpose in so doing, and in executing the instrument of writing unless it was for the

purpose of creating a lien in favor of the bank upon the Cameron property? He does not seem to have had any other purpose or motive in so doing than to secure the bank and to protect his sureties.

It is impossible under the circumstances to read the writing without coming to the conclusion that it was intended thereby to create an equitable lien or mortgage on the property therein described in favor of the bank, as collateral security for the moneys loaned to Watts. In such circumstances it is said: "The intent to give a security being clear, equity will treat the instrument as an executory agreement for such security." 3 Pomeroy's Equity Jurisprudence, sec. 1237.

In *Flagg v. Mann et al.*, 2 Summer L. C. 533, it was said by Mr. Justice STORY: "It has been said, that the true test, whether the conveyance in this case was a mortgage or not, is to ascertain whether it was a security for the payment of any money or not. I agree to that; and indeed, in all cases the true test, whether a mortgage or not, is to ascertain whether the conveyance is a security for the performance or non-performance of any act or thing. If the transaction resolve itself into a security, whatever may be its form it is in equity a mortgage. If it be not a security, then it may be a conditional or an absolute purchase."

In *Racouillat v. Sansevain*, 32 Cal. 376, it was held: "An agreement in writing, which by its terms makes a sum of money due from one to the other chargeable as a lien upon land, but which is neither under seal, nor so executed or acknowledged as to make it a mortgage within the act concerning conveyances, will be regarded as an executory agreement for a mortgage, and enforced in equity as a specific lien upon the land, as against the person executing and strangers having actual notice."

And the same rule is announced in *McQuie v. Peay et al.*, 58 Mo. L. C. 58, in which it was said: "The doctrine has long been settled that in addition to the actual, conditional conveyance of land, which constitutes a legal mortgage, courts of equity recognize certain other liens arising from the implied agreement of the parties, or the justice of the case, but not depending upon any express transfer of the title. These are termed equitable mortgages, and in general an agreement in writing to give a mortgage, a mortgage defectively executed, or an imperfect attempt to create a mortgage or to appropriate specific property to the discharge of a particular debt, will create a mortgage in equity, or a specific lien on the property so mortgaged. (1 Hill, Mort. [4 Ed.] 648.)"

We are therefore of the opinion that, by the writing signed by Watts and deposited with the bank, an equitable mortgage was thereby created in favor of the bank on the land described in the contract between him and the Missouri Wesleyan Institute.

The equitable mortgage having been executed by Watts to secure the payment of all three of his notes to the Watson Bank, when Poorbaugh liquidated the last two notes and released all of the collaterals to the bank, plaintiffs became entitled thereto.

The mortgage was not executed to secure the payment of any particular note, but for all of them, hence when plaintiffs paid off the note upon which they were securities, they were entitled to be subrogated to the rights of the bank to all the securities deposited by Watts with it to secure the payment of the notes. The payment of the debt by plaintiffs operated as an assignment of it to them, with all the rights and liens which attached to it as incidents in the hands of the Watson Bank. *Benne v. Schnecko*, 100 Mo. 250; Bispham's Prin. Eq., secs. 335, 336; 1 Brandt on Suretyship,

secs. 269, 270, 271; *Furnold v. Bank*, 44 Mo. 336; *Berthold v. Berthold*, 46 Mo. 557.

And the other notes to secure the payment of which the mortgage was executed as collateral having been paid, plaintiffs were entitled to the full benefit of the mortgage. In Lathrop and Dale's appeal (1 Barr. 512), after a review of many cases, it was said: "From the cases it would appear that we had adopted the general rule, that a surety by paying the debt of his principal becomes entitled to be subrogated to all the rights of the creditor, so as to have the benefit of all the securities which the creditor had for the payment of the debt, without any exception, as well those which became extinct, at law at least, by the act of the surety's paying the debt, as all collateral securities which the creditor held for the payment of it, which have not been considered as directly extinguished by the surety's paying the debt. These decisions have been made upon a supposed principle of equity, which, for the purpose of doing justice to the surety who has paid the debt, interposes to prevent the judgment or security which has been so extinguished at law from being so considered as between the surety and the principal or his subsequent lien creditors." *Furnold v. Bank, supra.*

As the case was tried by the court there was no error committed in the admission of evidence which would justify a reversal of the judgment upon that ground.

The collaterals aside from the contract for a deed to the Cameron property proved to be entirely worthless, and the defendant Watts hopelessly insolvent, so that said property is the only source to which plaintiffs can look for reimbursement for the money paid by them to the bank for the use of Watts.

Appellant had notice of the deposit by Watts with the bank of the contract for a deed to the Cameron

property at the time he purchased, and received a deed to said property.

We think the evidence also justifies the conclusion, that appellant was apprised of the extent of the claim of the bank. But if he was not it was his duty, knowing that the bank held the contract as collateral, to have ascertained from it by inquiry, the nature and extent of the claims under which it held the contract as collateral, and if he had done so he would have then learned, if indeed he did not know before, that the Cameron property had been in equity mortgaged to secure the payment of Watts' indebtedness to the bank, including the note upon which plaintiffs were sureties. From these considerations it follows that the judgment should be affirmed. And it is so ordered.

GANTT, P. J., and SHERWOOD, J., concur.