In the Matter of the Assignment of E. E. Snyder,
Claim of F. W. Port, C. J. Brickley, F. E. Austin,
Nathan Potter, W. H. Glick, George Huber, Appel-
lants, v. L. M. Carpenter, Assignee of E. E. Snyder,
and E. E. Snyder.

138    553
143    166

**Equitable mortgages:** DEPOSIT OF TITLE DEEDS: STATUTE OF FRAUDS.
1  The English doctrine that an equitable mortgage may be
created by the deposit of title deeds with a creditor is in viola-
tion of the statute of frauds, and has no applicability here be-
cause of our registry laws.

**Equitable mortgages:** HOW CREATED. No particular form of words
2  is required to create an equitable lien on real property; but any
express agreement in writing whereby the intention is clearly
indicated to make certain property described therein stand as
security for a debt, an equitable mortgage upon the property
is created which may be enforced. Evidence held sufficient to
establish a mortgage.

*Appeal from Jones District Court.*— Hon. B. H. Miller,
Judge.

MONDAY, JANUARY 20, 1908.

REHEARING DENIED, MONDAY, JUNE 8, 1908.

SUIT to establish a lien against certain real estate in the name of the assignee was dismissed. Claimants appeal. — *Reversed.*

*Jamison & Smyth,* for appellants.

*Park Chamberlain* and *F. O. Ellison,* for appellee.

LADD, C. J.— On December 13, 1905, E. E. Snyder, who operated the Bank of Olin as a private bank, executed a general assignment for the benefit of creditors with L. M. Carpenter as assignee. Lot twelve and the south half of lot sixteen of Highland Park in the city of Des Moines was part of the estate, but the deed to E. E. Snyder, under which he acquired title, had been deposited with F. W. Port under the following circumstances: In 1903 Snyder having a portion of the funds of the county deposited in his bank executed a bond conditioned to hold the county treasurer harmless by reason of such deposit or deposits, as exacted by section 1457 of the Code, with Port, Lamb and others as sureties. At the same time, to protect all the sureties against losses, the principal delivered to Port and Lamb, as security, several promissory notes, together with the above-mentioned deed accompanied with this writing: " Olin, Iowa, Nov. 25, 1903. The inclosed papers are deposited with K. T. Lamb *et al.,* to secure them against any loss by reason of signing my bonds as a county depository. This includes the Des Moines property, which is pledged to them as above stated. Edwin E. Snyder." Afterwards Port turned them over to Lamb. A new bond with the claimants herein as sureties was executed in 1904. Then

Lamb, upon ascertaining that he had been released from liability on the former bond, turned over the notes, deed, and writing to Port, who handed them back to Snyder. The latter then made a list thereof, and delivered the list with the papers to Port, again saying, " You keep them as security the same as you did last year." The claimants have repaid the county the money deposited by it in the bank, and have collected some of the notes deposited with Port as security. The sum of $3,123.19 is still owing them, and in this suit they ask that a lien therefor be established against the Des Moines lots.

I. The doctrine that an equitable mortgage may be created by depositing the title deed to land with a creditor had it origin in England, being first definitely announced in *Russel v. Russel,* 1 Brown Ch. Cas. 270, 18 *Ruling Eng. Cas.* 26. That decision has been regretted since as being in plain disregard of the statute of frauds, but consistently followed, with care, however, not to extend the doctrine. *Ex parte Hopper,* 19 Ves. 477; *Norris v. Wilkinson,* 12 Ves. Jun. 192. In that country the possession of the title deeds is evidence of ownership, as no one is supposed to have a right to retain them without having an estate or interest in the land they convey. They pass to the purchaser upon a sale, and are examined by the solicitor of the parties much as abstracts of title are examined in this country. This is for the reason that, until the recent partial adoption of the Torrens system, save in some counties, there were no registries, where a search could be made to ascertain the title to lands, other than copy hold titles which are recorded in the manor courts. The only proof which the purchaser seems to have for the validity of the title in his grantor is the exhibition of the deeds which establish it. So, after a deposit of his evidence of title with his creditor as security, the debtor cannot well dispose of his land without first satisfying the indebtedness secured, for, until this is done,

1. EQUITABLE MORTGAGES: deposit of title deeds: statute of frauds.

he is not in a situation to obtain possession of his title papers either at law or in equity.

Under our system of registry, however, possession of title deeds is of no real importance to the owner of the estate. He can convey the land without them. They are not necessary in order to ascertain the condition of the title. For all practicable purposes, certified copies of the record copies will serve as well as the originals. The conditions which lead to the recognition of the doctrine in England are entirely wanting in this country. It is not in harmony with our system of conveyancing and registry. The object of that system is to afford security to titles by a public record, which parties dealing with land may, and for their own protection must, examine, and on which they may rely. Secret transfers and liens are sought to be prevented thereby. For some or all of the foregoing reasons the courts of this country have quite generally rejected the doctrine, as will appear from an examination of the following authorities: *Probasco v. Brooks Johnson,* 2 Disn. (Ohio) 96; *Van Meter v. McFaddin,* 8 B. Mon. (Ky.) 435; *Gardner v. McClure,* 6 Minn. 250 (Gil. 167); *Gothard v. Flynn,* 25 Miss. 58; *Meador v. Meador,* 3 Heisk. (Tenn.) 562; *Lehman v. Collins,* 69 Ala. 127; *Bloomfield State Bank v. Miller,* 55 Neb. 243 (75 N. W. 569, 44 L. R. A. 387, 70 Am. St. Rep. 381); *Shitz v. Dieffenbach,* 3 Pa. 233. In the last case decisions in several States often cited to the contrary are reviewed, and it is shown that though they have recognized the English doctrine, in none of them has it been applied. As it is conceded by the English authorities to be in violation of the statute of frauds, and supported by precedent only, and is said to have occasioned much injustice, we are not inclined to adopt it, but the rather to follow the authorities of this country to the effect that the doctrine, because of our registry laws, has no applicability.

II. Appellants argue, however, that conceding the law to be as stated the objection was obviated by the memorandum

accompanying the deed.   It is true that, as asserted by ap-

2. Equitable
Mortgages:
how created.
pellee, this was first executed to secure the sureties on the bond of the year previous, but it was returned to Snyder, and by him redelivered with the notes and deed to Port, to be held for precisely the same purpose in connection with the last bond.   Something is said concerning the evidence being inadmissible to establish this owing to the statute of frauds.   Without deciding the point, it is enough to say that no such objection was made by pleading, or to the evidence in the district court, and it is too late now to be of any avail.   *Crossen v. White,* 19 Iowa, 109; *Holt v. Brown,* 63 Iowa, 319.   As we understand another objection, it is that the parties for whose benefit the instrument was delivered are not the same in both bonds.   The only apparent difference is the omission of Lamb's name from the second bond.   But according to Port it, with the deed, was delivered as security of the sureties on this bond, and claimants are conceded to be such.   The deed accurately describes the property as in Des Moines, and the memorandum pledges as security " the Des Moines property," " to secure them against any loss by reason of signing " the bond of Snyder, to use his bank as county depository.   While the instrument is informal its purpose is manifest, and there is no reason for not enforcing the lien intended thereby to be created. No particular formality is necessary in order to make a valid mortgage between the parties thereto.   *Frick v. Fritz,* 115 Iowa, 438.   Says Judge Story:   " If the transaction resolves itself into security, whatever may be its form, it is in equity a mortgage."   *Flagg v. Mann,* 2 Sumn., Loc. Cit. 533, Fed. Cas. No. 4,847.   In *Jackson v. Rutherford,* 73 Ala. 157, the court held that " no technical words are necessary to constitute a mortgage which would be good at law any more than in equity.   Any words would be sufficient which serve to show a transfer of the mortgaged property as security for the debt."   Again, the same court observed

in *Kyle v. Bellenger,* 79 Ala. 516, " a lien created by con-
tract, and not sufficient as a legal mortgage, will generally
be regarded in the nature of an equitable mortgage.    The
form of the contract is immaterial.    Though a lien may not
be expressed in terms, equity will imply a security from
the nature of the transaction, and give it effect as such in
futherance of the agreement of the parties, if there appears
an intention to create a security."    See *Wood v. Holly Mfg.
Co.,* 100 Ala. 326 (13 South. 948, 46 Am. St. Rep. 56).
The rule is clearly expressed in *Howard v. Iron, etc., Co.,*
62 Minn. 298 (64 N. W. 896).    " Every express agree-
ment in writing, whereby the party clearly indicates an in-
tention to make some particular property therein described
as security for a debt, creates an equitable lien upon the
property, which is enforceable.    The form of the writing is
not important, provided it sufficiently appears that it was
thereby intended to create a security.    If that intention
appears, it will create a mortgage in equity, or a specific
lien on the property so intended to be mortgaged."    See,
also, *Higgins v. Manson,* 126 Cal. 467 (58 Pac. 907, 77
Am. St. Rep. 192) ; *Martin v. Bowen,* 51 N. J. Eq. 452 (26
Atl. 823) ; *Dulaney v. Willis,* 95 Va. 606 (29 S. E. 324,
64 Am. St. Rep. 815) ; *Hackett v. Watts,* 138 Mo. 502 (40
S. W. 113) ; 27 Cyc. 990.    The memorandum in connec-
tion with the deed is clearly within the doctrine as an-
nounced, and, as the assignee in acquiring the property was
charged with notice of outstanding equities, a decree should
have been entered awarding a relief as prayed.— *Reversed.*