MARY S. MING, Appellant, v. OLSTER et al.

**Division One, March 30, 1906.**

1. **PLEADING:** Contract: Presumption. When a petition states that a contract was made, the presumption is that it intends to say that the contract was made in form to constitute it a legal obligation; and if it be a transaction that the Statute of Frauds requires to be in writing, the presumption is that the pleader means to say that it was in writing; and if on the trial he attempts to prove it by oral testimony, his adversary may object although his plea be only a general denial.

2. ——: ——: ——: Partition: Equity. So that an answer to an ejectment brought by one of two devisees which pleads that the devisees made partition of the lands devised to them whereby the land in suit was set apart to one of them, and he entered into possession and thereafter held it in severalty until he mortgaged it and it was sold thereunder to defendant who holds it under a trustee's deed, and another tract was set apart to plaintiff who entered into possession and still holds it in severalty, does not plead an equitable defense, even though it does not state that the partition was effected by good and sufficient deeds, for the presumption of law is that it was so effected. And if the answer does not go further and allege that the partition rested in parol and that each party entered into possession of the part set apart to him respectively and remained in possession down to the time of the execution of the deed of trust by defendant's ancestor, and the sale thereunder to defendant, thereby inducing the public to believe that each devisee owned his part in severalty, it does not plead an equitable defense to plaintiff's ejectment, and under plaintiff's reply in the nature of a general denial to defendant's answer he has the right to object to any evidence except such as is required by the Statute of Frauds.

3. ——: ——: ——: ——: Admissibility of Evidence: Genuineness of Deed. But where the allegation of the answer is that the plaintiff and her brother made partition of the land, the reply to which was a general denial, parol evidence tending to show that after the alleged act of partition the parties took possession of their respective parts and thereafter each continued to exercise exclusive ownership over his or her part, is admissible under the issues in the action at law where the genuineness of the deed made by plaintiff and her husband is in issue, since such conduct is consistent only with the validity of the deed, and tends to establish estoppel *in pais*.

4. ——: Estoppel in Pais. A plea of estoppel *in pais* is not necessarily a matter of equity jurisdiction; it is cognizable also in courts of law. It is denominated "equitable estoppel" because it arises upon facts which render its application in the protection of rights equitable and just; and under some circumstances, for instance, where it becomes necessary to fill a gap in the record title by a decree vesting the title, full effect cannot be given to the estoppel by a mere judgment at law, and in such case a court of equity can afford more adequate relief; but where no affirmative relief is sought, it may still be invoked to defeat an action at law.

5. ——: ——: Partition: Title: Equity Court. In a suit in ejectment wherein the defense is that the land was partitioned by plaintiff and her brother, through whom defendant claims,

a plea of estoppel, to the effect that after partition each party took possession of his respective tract and retained exclusive possession until after the brother had incumbered the land by a mortgage under which at foreclosure sale defendant bought, will not invoke the aid of a court of equity if it fails to point out any defect in the legal title under which defendant claims. If defendant relies on the defense that the partition was effected by good and sufficient deeds, evidence that each party took possession of his or her share and retained possession with the other's consent will be available to establish the genuineness of the deeds, and to estop plaintiff from recovering in ejectment, but the plea of estoppel based on such facts will not authorize a court of equity to affirmatively settle the title in defendant. However, defendant might have pleaded the legal title and the equitable estoppel in the alternative, as authorized by the statute:

6. **PARTITION: Forged Deed: Question of Fact.** Whether or not a deed in partition is a forgery is a question of fact, not of law. And if there is evidence tending to sustain the finding of the trial court, sitting as a jury, to the effect that the deed was a forgery, the appellate court will not interfere with that finding.

7. **EVIDENCE: Copy of Deed: Proof of Existence of Original.** The common-law rule that secondary evidence of the contents of a written instrument cannot be introduced until proof is made to show that there was such a document duly executed, has been supplanted by our registry statute. It ranks the certified copy next to the original, and permits it to be read in evidence whenever the original is not in the possession or control of the party offering it; and makes it prima facie evidence, subject to be discredited by a showing that either it or the original was a forgery.

Appeal from Cooper Circuit Court.—*Hon. Jas. E. Hazell,* Judge.

AFFIRMED.

*Bente & Wilson, Joseph F. Rutherford* and *Mark A. McGruder* for appellant.

(1) (a) The certified copy read in evidence showed that the instrument was filed for record more than one year after its date. Attention of the trial court was called to the date of recording. The deed had not been

on record for twenty years before it was offered. Before the original deed could have been received in evidence under these circumstances, it devolved upon the party offering it to first prove to the satisfaction of the court that such deed was acknowledged or proved and recorded according to law, and that the persons who executed the instrument were the persons therein named as grantors. R. S. 1899, sec. 3114. Certainly no less proof would be required concerning a copy. Our statute provides and this court has held that a certified copy of such an instrument would not be admissible until such proof be first made. R. S. 1899, sec. 3115; Aubuchon v. Murphy, 22 Mo. 123. In this case no such proof was made. The original deed was not offered in evidence, but the copy of the record was offered and by the court admitted in evidence, over the plaintiff's objection and offer to prove that the deed was a forgery, and without hearing any proof whatever as to the execution of the deed by the persons therein named as grantors. (b) Objection was made by plaintiff's counsel to the introduction of both the original and certified copy of the record, on the ground that the instrument was not executed by one of the persons in whose name it purported to have been executed, and plaintiff offered to submit proof in support of such objection. It was the duty of the court to then hear evidence upon this point and admit or reject the instrument, according to the evidence. The court admitted the certified copy, over said objection, and without hearing any evidence as to whether John O. Ming, the husband of plaintiff, executed the instrument. R. S. 1899, sec. 3117. (c) The certified copy was not admissible until defendants had first shown that John O. Ming executed the original. When it appears that the original has been lost or destroyed, a certified copy of the record thereof is admissible upon like proof as is required in case of the original. That is to say, proof that the person who executed the instrument is the person

therein named as the grantor. In this case no such proof was offered, or even required by the court. (d) Plaintiff disputed the existence of the original deed, executed as required by the statute in force at the time. The certified copy offered in this case did not tend in any manner to prove the execution of the original instrument. Although the copy appeared to be in proper form, yet it had not been recorded for more than a year after the date of its alleged execution, and it certainly could not be said that the copy would in any manner tend to prove "that the person who executed the instrument is the person therein named as grantor." "Secondary evidence cannot be substituted for any writing, the existence of which is disputed." 2 Elliott on Evidence, sec. 1268, p. 518. (e) It is fundamental that the copy introduced was secondary evidence, and, as such, was admissible only upon proper showing of the loss or destruction of, or inability to produce, the original. To render secondary evidence admissible in any event, it must first be made to appear by the evidence that the original instrument had an existence as a genuine instrument. 2 Elliott on Evidence, sec. 1458; Atwell v. Lynch, 39 Mo. 520; Perry's Admr. v. Roberts, 17 Mo. 36; Holman v. Bacchus, 24 Mo. App. 629; Zollman v. Farr, 93 Mo. App. 236; Hammond v. Johnson, 93 Mo. 208. (f) The copy of the acknowledgment contained in the certified copy offered was no proof of the previous existence of a genuine deed. Smith v. Phillips, 25 Mo. 557; Hammond v. Johnson, 93 Mo. 209. (2) (a) The original deed was not put in evidence. It was shown to the court and the attention of the court called to alterations in the instrument. It was not incumbent upon plaintiff to explain these alterations or mutilations. Defendants relied upon this deed. The rule is that the party relying on the instrument must explain alterations. Stillwell v. Patton, 108 Mo. 353. (b) The original was not before the court as evidence, no proof being made that it was executed by the parties named

as grantors. The execution not having been proved according to law, the instrument was not entitled to record, and hence the copy was valueless as evidence. Patterson v. Fagan, 38 Mo. 71. (c) In this stage of the record the time, nature or extent of the alteration seems to be wholly immaterial. The original was not filed for record within one year after its date. There was no proof that John O. Ming, named therein as a grantor, executed the deed. Whether altered or not the original was not admissible without such proof. R. S. 1899, secs. 3114, 3115. (3) In addition to their legal defense, defendants also pleaded an equitable defense, praying for affirmative relief. No affirmative relief is given, however, as appears from the judgment of the court. We insist that the alleged partition could not be confirmed, even at the instance of Fisher, for the reason: (a) that such partition was never made; and (b) that the alleged partition was not fair and equal; and (c) the parties did not take possession of their respective portions under and in accordance with the terms of such partition. Gulick v. Huntley, 144 Mo. 249; Sutton v. Porter, 119 Mo. 104; Nave v. Smith, 95 Mo. 596. (4) (a) Defendants' answer further alleges that relying upon the parol partition, Marshall was induced to loan Fisher money, evidenced by the note and deed of trust, and was afterwards induced to purchase this land at the foreclosure sale, and upon these grounds a court of equity is asked to hold that plaintiff is estopped from claiming her interest in this land. "Before the party is concluded by an estoppel, it must appear, first, that he has made an admission which is clearly inconsistent with the evidence he proposes to give, or the title or claim he proposes to set up; second, that the other party has acted on the admission; third that the other party will be injured by allowing the truth of the admission to be disproved." Acton v. Dooley, 74 Mo. 67; Burke v. Adams, 80 Mo. 504. (b) Plaintiff

195 Sup.—30

must have done some act with the intention that the other party should act upon it, and the other party must have been induced thereby to act, and to his injury. Bigelow on Estoppel, 480; Burke v. Adams, supra. (5) (a) There is no finding in this case upon the equitable defense or cross-action pleaded in the answer. The conclusion, therefore, is irresistible that the trial court's finding in this case was upon the legal defense raised by the answer. Baldwin v. Whaley, 78 Mo. 186; Joyce v. Growney, 154 Mo. 253; Ross v. Ross, 81 Mo. 84. (b) Unless a judgment is responsive to the issue set up in the pleadings, it is erroneous. Schneider v. Patton, 175 Mo. 684.

*A. F. Rector* and *W. M. Williams* for respondents.

(1) The certified copy from the records of Saline county of the deed dated January 31, 1882, from plaintiff Mary S. Ming and John O. Ming, her husband, to James P. Fisher, was properly admitted in evidence. (a) It was shown that the original was not within the power of the defendants. No notice to produce the deed was necessary. R. S. 1899, sec. 933; Gilbert v. Boyd, 25 Mo. 27; Bartain v. Murrain, 27 Mo. 238; Frank v. Reuter, 116 Mo. 521. (b) The instrument presented by plaintiff had been mutilated and changed since it was recorded. It was apparent from an inspection that material alterations had been made in it and the circumstances cast a suspicion upon it. It did not come from the proper custody. Defendants do not claim under it. Plaintiff, upon the contrary, produced it to defeat their rights and to overthrow their title. Defendants were not precluded from using the certified copy by the production of an instrument by plaintiff, which showed upon its face material and suspicious alterations since its record. There is no presumption that said paper produced by the plaintiff is in the same condition as when executed. Paramour v. Lindsay, 63 Mo.

63; Burton v. American Guarantee Co., 88 Mo. App. 392; Derr v. Mason, 1 N. J. Law 10. (c) The record made on the 14th of June, 1883, was better evidence of the contents of the deed when it was executed and delivered than the mutilated paper produced by plaintiff, showing upon its face material and suspicious alterations after its record. Walker v. Walker, 46 Pa. 571. (2) A certified copy of a deed, regular upon its face and properly acknowledged according to the records, may be admitted in evidence where the original is "not within the power of the party wishing to use the same." R. S. 1899, sec. 933. (a) When so admitted it is prima facie evidence of the due execution of the original deed, as well as of its contents, and no further proof of execution is necessary. Eaton v. Campbell, 7 Pick. 10; Hathaway v. Spooner, 9 Pick. 25; Ward v. Fuller, 32 Mass. 187; Scandal v. Wright, 30 Mass. 523; Blasey v. Delius, 86 Ill. 558; Kelsey v. Hanmer, 18 Conn. 311. (b) The fact that plaintiff denied the execution and acknowledgment of the deed was not sufficient to exclude the certified copy. Sudlow v. Warshing, 108 N. Y. 522; Thurman v. Cameron, 24 Wend. 92; Gary v. Kansas City, 61 Mo. 378; Dale v. Wright, 57 Mo. 110. (c) The fact that it was recorded raised a presumption of a delivery of the deed. McReynolds v. Grubb, 150 Mo. 362. (3) Defendants having introduced a certified copy, which was prima facie evidence of the due execution and acknowledgment of the deed from Mary S. Ming and John O. Ming, her husband, to James P. Fisher, the burden was on the plaintiff to overthrow the certificate of acknowledgment attached thereto. (a) "Extraneous evidence to overcome the certificate of acknowledgment must be strong and convincing." Springfield Engine & Thresher Company v. Donovan, 147 Mo. 633. (b) The trial court was not bound to take the testimony of Mary S. Ming and the notary as outweighing the certificate. The evidence of the notary could not have much weight to overthrow his certificate. He

spoke from recollection of what passed nearly twenty years before. Riecke v. Westenhoff, 10 Mo. App. 363. (c) The question whether the deed from Mary S. Ming and husband to James P. Fisher was executed and delivered by them was a question of fact for the trial court upon the legal defense set up in the answer, and this issue was found in the affirmative. Defendants, therefore, had the legal title. This court will not review the findings of fact by the trial judge upon this matter. The weight of the evidence was for the court below. (d) The trial court was amply justified in its findings. (4) Sections 3113, 3114, 3115 and 3116 of the statutes, cited by appellant, have no application to the certified copy of the deed read in evidence in this case. The first three of the above sections refer to deeds or conveyances acknowledged or proved according to the law in force at the time of making such acknowledgment, but which are not declared by such law to be evidence, and the last is concerning a deed or conveyance recorded more than twenty years, but which shall not have been proved or acknowledged according to the law in force at the time of its record. The deed from Mary S. Ming and John O. Ming, her husband, was recorded June 14, 1883. The certificate of acknowledgment was in the form prescribed by the statutes of 1879, which were then in force. Sections 696 and 697, Revised Statutes 1879, provide that a deed, so acknowledged and recorded, or a certified copy thereof, when the original is not within the power of the party wishing to use the same, may be read in evidence. (5) The partition, even though no deeds had been executed, and although Mary S. Ming was then a married woman, was valid and binding. The parties took possession of their respective farms, executed deeds of trust or mortgages upon the same separately, and as sole owner, and otherwise exercised control thereof. Sutton v. Porter, 119 Mo. 100; Freeman on Cotenancy and Partition, sec. 412; Whitsett v. Wamack, 159 Mo. 14.

VALLIANT, J.—Plaintiff sued in ejectment for an undivided half of a tract of land in Saline county containing 584 acres; the cause was taken by change of venue to the circuit court of Cooper county where it was tried and judgment rendered for defendants, from which judgment the plaintiff has appealed.

The petition is in the usual form. The answer of defendant Olster admits that he is in possession as tenant under his co-defendant Marshall, and denies all the other allegations of the petition. Defendant Marshall by his answer admits that he is in possession in the person of his tenant Olster and denies all other allegations of the petition; then he goes on to plead what he calls an equitable defense which is substantially as follows: The land in suit with other lands were owned by one Jacob H. Fisher in his lifetime, who died in 1866 leaving a will whereby he devised this and his other lands to his two children, James P. Fisher and the plaintiff, Mary S. Fisher. That in January, 1882, James and Mary, she being then Mrs. Mary S. Ming, made partition of the lands devised to them, whereby the land in this suit, called the Shroyer farm, was set apart to James Fisher, and a certain other tract, called the Finley farm, was set apart and conveyed to the plaintiff, Mary S. Ming, each entering into possession of the farm allotted to him and her respectively and holding it thereafter in severalty. That in 1887 James Fisher executed a deed conveying the Shroyer farm to a trustee, to secure a certain promissory note therein described, with power of sale. That in December, 1900, default in payment of the note having been made, the deed of trust was foreclosed according to its terms, the land sold and bought at the trustee's sale by defendant Marshall for the sum of $18,500, to whom the trustee executed a deed, under which this defendant went into possession and holds the same. That this defendant made the loan to James Fisher, for which the note and deed of trust above mentioned were executed, relying

on the partition and on the fact that the plaintiff went into possession of the Finley, farm thereby set apart to her and has ever since held the same, and therefore she is now estopped from asserting any claim to the Shroyer farm set apart to her brother James Fisher. The answer concludes with a prayer that the partition be confirmed, the title to the Shroyer farm be decreed to defendant Marshall and the plaintiff be enjoined from asserting title thereto. The reply denies that there was any partition and says that if James Fisher gave a deed of trust on the Shroyer farm, as alleged, it was without her knowledge or consent.

I. Before referring to the evidence, let us go to the pleadings and ascertain what the issues were. This becomes necessary in the consideration of one of the assignments of error by appellant, that is, that the general finding for defendants without reference to what is called the equitable defense pleaded in the answer, was not responsive to the issues, and that the general judgment thereupon left the equity feature of the case undisposed of or left the plaintiff at sea without knowing whether she was defeated on the one or the other phase of the case.

The answer does not really set up an equitable defense and there was no evidence offered by defendants which, if admissible at all, was not admissible under the general denial in defense of the legal title.

Defendants relied for their title on the alleged partition between the brother and sister. If that partition was executed by means of a deed or deeds executed according to law, it was a complete legal defense to the plaintiff's action. If it was not executed by means of such deeds, but rested in parol and in the fact that the parties entered into and remained in possession, each of his and her allotted part and the continuance of that situation down to the time of the execution of the deed of trust, inducing the public to believe that each owned

his and her several farms respectively, and on the faith of that the loan secured by the deed of trust was obtained by James Fisher, then a case for the interposition of equitable jurisdiction would arise. But this answer does not say that that was a parol partition and for that reason it fails to show any ground for the interposition of the powers of an equity court. True the answer does not say that the partition was effected by good and sufficient deeds of conveyance, but that is not necessary. When a petition states that a contract was made, the presumption is that it intends to say that the contract was made in form to constitute it a legal obligation, and if it be a transaction that the Statute of Frauds requires to be in writing, the presumption is that the pleader means to say that it was in writing, and if on the trial he should attempt to prove it by oral testimony his adversary may object although he may have entered only a general denial. [Allen v. Richard, 83 Mo. 55; Springer v. Kleinsorge, 83 Mo. 152; Boyd v. Paul, 125 Mo. 9.]

It is the fact, but not the evidence by which the fact is to be proven, that is required to be pleaded. Therefore, treating this answer as an affirmative defense setting up the act of partition, the plaintiff under the general denial in her reply had a right to object to any evidence except such as would be admissible under issues as in an action at law, that is to say, written evidence as required by the Statute of Frauds.

There was some evidence in the case tending to show that after the alleged act of partition the parties took possession of their respective shares and each thereafter continued to exercise acts of exclusive ownership of his and her part. That was evidence of a kind that would have been admissible to sustain an equitable or parol partition, but there was no objection to the evidence made on that ground, or if made there was no exception preserved. Besides, as will hereinafter more clearly appear, such evidence would have been

admissible in this case under the issues in the action at law, because the main point of conflict was as to the genuineness of the deed in partition alleged to have been executed by the plaintiff and her husband; such evidence tended to show her treatment of her property and her knowledge of her brother's treatment of it, consistent only with the validity of the deed whose genuineness she now disputes, and thus it tended to meet her evidence on that point.

A plea of estoppel *in pais* is not necessarily a matter of equity jurisdiction; it is cognizable also in courts of law. In Bigelow on Estoppel (5 Ed.), p. 557, it is said: "Though still called 'equitable estoppel,' it is as fully available at law as in equity." In 16 Cycl. L. & P., p. 682, it is said: "The term [estoppel *in pais*] was borrowed originally from equity and hence denominated 'equitable estoppel.' Equitable estoppels are so called not, however, because their recognition is peculiar to equitable tribunals, but because they arise upon facts which render their application in the protection of rights equitable and just. The doctrine is recognized in the courts of common law just as much as in courts of equity, although it was at first administered as a branch of equity jurisprudence."

Under some circumstances, however, full effect cannot be given to the estoppel by a mere judgment at law, for example, where it becomes necessary to fill a gap in record title by a decree vesting the title. The law-writer last above quoted says: "Where, however, the estoppel sought to be set up involves the title to land or interests therein which can only be transferred by deed, it is held in some jurisdictions that it cannot be taken advantage of in an action at law." [16 Cycl. L. & P., pp. 725-6.]

In the case at bar, if the partition relied on by defendants was not evidenced by a legal deed or deeds, but rested its proof only in parol, whilst a court of law might have taken cognizance of the plea, yet a court of

equity could have rendered more adequate relief by an affirmative decree transferring and vesting the legal title where it would have been if a proper deed at the time had been executed by the parties.

Defendants' plea of estoppel in the case at bar says in effect that the plaintiff and her brother, owning jointly these two farms, made partition of them, giving to her one and to him the other, whereupon each took exclusive possession of the one allotted to her or him, assuming all the indicia of separate ownership, and on the faith thereof the brother of the plaintiff obtained the loan for which he executed the deed of trust under which defendants claim, therefore the plaintiff ought not to be heard to dispute the fact of partition, and a court of chancery ought to make a decree settling the title. The defect in the defendants' plea of estoppel is that it fails to point out any flaw in the legal title under which they claim, and therefore gives no reason for invoking the aid of an equity court. This was not an accidental omission, as was shown by the course of the defendants at the trial; their position then was and now is that the partition was effected by good and sufficient deeds, and if that is the case there was no occasion for invoking the doctrine of estoppel; there is no room for its application. Defendants might, if they had chosen to do so, have availed themselves of the privilege of pleading the legal title and the equitable estoppel in the alternative, as authorized by section 605, Revised Statutes 1899, but they did not do so. As it is, the answer sets up no defense that could not have been proven under the general denial, and there was nothing for the court to try except the issues involving the legal title, which the court did, a jury being waived.

II. At the trial the plaintiff introduced in evidence the will of her father Jacob H. Fisher by which the farm in suit and other farms were devised to her brother and herself; also evidence as to its rental value,

a decree of a court in Montana granting her husband a divorce and dissolving their bonds of matrimony, and a lease dated in November, 1900, from plaintiff to Olster for this Shroyer farm.

Defendants evidence was as follows:

1. A certified copy of what purported to be a deed executed by the plaintiff and her then husband, John O. Ming, conveying with general warranty to James P. Fisher the land in suit. It was dated January 31, 1882, filed for record June 14, 1883; the consideration expressed was the conveyance to her of Fisher's undivided half of the Finley farm. The copy was duly certified by the recorder of deeds of the county.

When this was offered it was objected to on the ground that "no such deed was ever executed and for the further reason, if it had been, the original would be the best evidence." Defendants then introduced evidence to show that the original was not in their possession or under their control. Thereupon counsel for the plaintiff presented a paper which they said "purports to be the original." When asked if they tendered the original deed they answered: "We make no tender of it. We have it here and we object to your using copy." The paper was then shown to the court, and the attention of the court was called by defendants' counsel to what appeared to be erasures causing it to differ in material points from the certified copy, the chief point of difference being the erasure of the name of John O. Ming in the certificate of acknowledgment. The certified copy was again offered in evidence and counsel for plaintiff said: "We make the further objection to the original deed in this case that it is a forgery, and now offer to prove that the original deed as tendered here was never executed, signed or acknowledged by John O. Ming; and that the certified copy in this case is a copy of a forged deed which never existed." The court allowed the copy to be read, to which plaintiff duly excepted.

2. A deed of trust dated October 27, 1887, by James P. Fisher to Robert J. McMahan, trustee, conveying the land in suit to secure James A. Marshall in the sum of $12,200, duly acknowledged and recorded. Objection to this was made on the ground that James could not convey Mary's title.

3. A deed from the sheriff acting as substituted trustee foreclosing the deed of trust, dated January 5, 1901, conveying the land to James A. Marshall for the sum of $18,500 cash, to the trustee paid.

4. A deed from James P. Fisher conveying the Finley farm to Mary S. Ming, of the same date as the deed from Mary S. Ming and John O. Ming, her husband, above shown, and filed for record March 1, 1882.

5. A deed of trust executed by Mary S. Ming, December 7, 1888, conveying the Finley farm to a trustee to secure the Missouri Trust Company in the sum of $2,400, duly acknowledged and recorded December 12, 1888, with subsequent notation on the margin of the record that the debt had been paid and the deed of trust released.

6. A similar deed of trust on the same land executed by Mary S. Ming to secure a debt of $4,000 dated April 1, 1900, to another party.

The testimony showed that the two deeds of partition, of date January 31, 1882, were in the handwriting of John O. Ming, the then husband of the plaintiff.

There was other evidence on the part of defendants tending to show that James Fisher exercised acts of exclusive ownership over the Shroyer farm and that the plaintiff did so with the Finley farm and that all the while they lived together in the town of Houstonia.

Plaintiff in rebuttal introduced evidence tending to show that the Finley farm was not as valuable as the Shroyer farm and therefore the partition was not an equitable one. This evidence was addressed to what was supposed to be the equitable defense in the case.

Plaintiff also introduced evidence tending to show that she and her brother for several years after the alleged partition, together exercised acts of ownership over both the farms. Also evidence tending to show that her former husband did not execute the partition deed or acknowledge it, that his name was forged to it.

It is unnecessary to set out the plaintiff's evidence tending to prove that the deed of partition was not signed or acknowledged by her husband; it is sufficient to say that such testimony was introduced and that it was weighed by the court and found wanting. The original deed exhibited by the plaintiff showed that it had been tampered with and the circumstances justified the court in concluding that the erasures had been made after the deed had been recorded.

The cause was submitted to the court without any instruction or declaration of law being asked or given. There was no exception taken to any ruling of the court on the admission of evidence except that in relation to the admission of the certified copy of the deed from the plaintiff and her husband to James Fisher, and the only ground of objection to that, other than that it was a copy, was the assertion that the original was a forgery, which of course presented a question of fact, not of law.

Plaintiff complains that the court ought to have interrupted the order of procedure and allowed her to inject her testimony tending to show that the deed was a forgery into the defendants' case before they had rested. But that would have been irregular. When the defendants showed that they did not have the original deed or control of it they were entitled, under the express terms of the statute, to read the certified copy in evidence. [Sec. 933, R. S. 1899.] When her turn came, the plaintiff was allowed to introduce all the evidence she offered tending to discredit the deed.

Plaintiff invokes the common-law rule of evidence that secondary evidence of the contents of a written

document cannot be introduced until proof is made to show that there was such a document duly executed. But our statute gives the certified copy of a recorded deed a force as evidence which was not accorded to a mere copy at common law. The statute takes into account that the recorder has examined the deed before he puts it on record and it ranks his certified copy next to the original and allows it to be read in evidence whenever the original is not in the possession or control of the party offering it. The law makes the certified copy only prima facie evidence, however, and the other party may, if he can, discredit it by showing, as the plaintiff tried to do in this case, that the pretended original was a forgery, or discredit the copy in any other manner to which it is amenable. That privilege was accorded to the plaintiff in this case; she was allowed to show, if she could, that there was no such deed executed. But her proof did not satisfy the trier of the fact. We find no error in the record.

The judgment is affirmed. All concur.